No. 55.—THE JUSTICES OF THE INFERIOR COURT OF TALBOT COUNTY, plaintiffs in error, *vs.* ABNER M. HOUSE, defendant.

[1.] The law that requires the Judges of the Superior and Inferior Courts to sign the minutes, is only *directory;* and the minutes, although not so signed, are to be considered valid, until it be shown that they have been disapproved by the Court.

[2.] It is not essential to the validity of minutes, that they should show the place at which the Court sat.

[3.] The Justices of the Inferior Court have power to contract by *parol* for the building of bridges.

[4.] On a question, whether the Inferior Court is liable to a *mandamus* for refusing to pay for a bridge, the individual members of the Court are competent witnesses for the Court.

Mandamus. Talbot. Tried before Judge POWERS, March Term, 1856.

Abner M. House alleged in his petition for *Mandamus*, that he had, prior thereto, entered into a certain contract with the Justices of the Inferior Court of Talbot County, in which it was agreed that he should build a *lattice* bridge for the public use, over Lazar Creek, in said county, and that they should pay him the sum of $100, in advance, and the value of the work, less that sum when finished. It is further alleged, that the bridge was built according to the terms of the contract; that payment therefor had been demanded of the said Justices, and that they had refused payment and rejected his claim, although they had accepted the bridge built by him.

The said Justices, in their answer to the order of the Court founded on said petition, denied all the allegations of the relator, in respect to the contract set up, and declared all the statements in the said petition to be false in every particular. They then gave, in detail, the history of certain transactions growing out of the building and the contracting, by the relator, to keep in repair a certain bridge, which finally led to the building of the *particular bridge* in question; and which last mentioned bridge, they say, was built without their authority, and in the absence of any contract whatever between the parties.

They admit that they, having been informed that the relator, whilst building *this* bridge, had exhausted his own means for carrying it on to completion, and on account of the fact that he had been unfortunate in the previous transactions above adverted to, had allowed him the sum of $100 as a gratuity, to assist him in said work; but they deny that this sum was paid under or by virtue of any contract whatever; and they go into a lengthened statement of facts concerning the matters in dispute, to show that they are not responsible, as charged, but which is not necessary to be given here.

A bond given by the relator respecting the keeping in repair, by him, of a *former* bridge for five years, on which bond

E. H. Worrell was one of the securities, was made a part of said return.

Issue was joined upon this return, and upon the trial, a mass of testimony was put in evidence on both sides; but the decision of this Court does not require the same to be here given.

In the course of the trial, the relator offered in evidence certain orders from a book of records, as the minutes of said Inferior Court; defendants objected, because (neither) said orders, nor the action of said Court alleged to be contained in said book, were signed by the Justices of said Court or either of them; and because neither the book nor the entries therein showed the place of the meeting of said Court, (said minutes showing a majority of said Court to have been pres ent at said meeting.) The defendants had agreed that the book might be used in place of an exemplification.

The relator then withdrew the book and examined GEORGE. N. FORBES, who testified, that he was Clerk of the Inferior Court of said county, and the keeper of the records of said Court; that the book offered by the relator was kept as the minutes of the Court, and that the Court had no other book for that purpose.

On cross-examination, he testified, that he was not present when the orders proposed to be read in evidence by relator were made; that these orders were sent to him by one of the Justices of said Court, and were, by him, entered on the book; that he did not know where the Court met, or who were present at the granting of the orders; that he heard one of the Justices complain that the orders had been entered; that these orders were not signed by any of the Justices; that the Court frequently had meetings and transacted busi- ness for county purposes, when he, witness, was not present; and he made out the minutes by memoranda furnished by one of the Court, as in this case.

The Judge examined the book, and it appeared that some of the proceedings entered on said book had been signed by members of the Court since the entry of these orders; and

that before that time, the minutes had been signed by the Justices on one or two occasions, but not generally.

The Court then decided that the orders might be read to the Jury, and the defendants excepted.

The respondents sought to introduce William B. Marshall, James C. Leonard and Benson Maxwell, Justices of said Court, as witnesses in said case; the Court refused to allow them to testify, and defendants excepted.

After the evidence closed, the Court, among other things, charged the Jury, "That on the trial of this issue, the answers of the respondents to the *mandamus* were pleadings and not evidence, and that they were not to be regarded as evidence."

The Jury found in favor of the relator, and the respondents assigned error upon several grounds; among which, the following only are necessary to be given:

1st. The Court erred in allowing relator to read the orders hereinbefore mentioned as minutes of said Inferior Court, in evidence.

2d. The Court erred in allowing Edmund H. Worrell to testify in said case, he being interested as security of relator.

3d. The Court erred in refusing to allow defendants to read to the Jury the return of defendants.

4th. The Court erred in refusing to allow the testimony of William B. Marshall, James C. Leonard and Benson Maxwell, Justices of said Court.

5th. The Court erred in charging the Jury, that in making up their verdict they could not take into consideration the return of said defendants.

Smith & Pou, for plaintiffs in error.

B. Hill, *contra.*

*By the Court.*—Benning, J. delivering the opinion.

House, the defendant in error, wished to use as evidence,

what, as he insisted, were certain orders of the Inferior Court; and to prove that they were the orders of that Court, he offered in evidence a book as the minutes of that Court, on which book they were found entered.

To the admission of this book in evidence, the plaintiffs in error objected, and gave two reasons for the objection: first, that the assumed orders were not signed by the Court; secondly, that the book did not show the place of meeting of the Court.

This objection being made, the defendant in error withdrew his offer of the book, and examined the Clerk of the Court, Forbes, who testified, that the book was kept as the minutes of the Court, and that the Court had no other book for that purpose; that he was not present when the orders proposed to be read were made; that these orders were sent to him by one of Justices of the Court, and by him were entered on the book; that he did not know where the Court met or who were present, when the orders were granted; that he had heard one of the Justices complain, that the orders had been entered; that the orders were not signed by any of the Justices; that the Court frequently had meetings and transacted business for county purposes when he was not present; and that in such cases, he made out the minutes by memoranda furnished him by one of the Justices, as he did in this case.

The Judge then inspected the book, and it appeared that some of the proceedings entered on it had been signed by members of the Court since the entry of these orders; and that before the entry of these orders, the minutes had been signed by the Justices on one or two occasions, but not generally.

Having inspected the book, the Court admitted it in evidence.

Was this right in the Court?

And first, was it indispensable that the minutes should be signed by the Justices? We think not. We think that the law which says that the minutes " shall be signed by the

Judge of the Superior, or presiding Justices of the Inferior Courts, (as the case may be,) prior to the adjournment, from day to day," (*Cobb's Dig.* 573,) is merely *directory* to the Justices. The law does not say that the minutes shall, if unsigned by the Justices, be of no effect. The Constitution says that a Judge of the Superior Court, whenever he grants a new trial, shall enter on the minutes of the Court, "his reasons for the same." And this, we have held to be only directory. The law aforesaid further says, that "the Clerks shall also keep regular and fair minutes of all the proceedings in any of said Courts." It is thus made the duty of the *Clerk* to keep the minutes. And as it is to be presumed that every officer does his duty, until the contrary be shown, we think that what the Clerk keeps as minutes, are to be considered minutes, until it be shown that the Court rejected them as minutes.

In this case that is not shown. What is shown is, that it was not usual for the Court to sign the minutes, but that it sometimes did sign them; and that it had signed on the book of minutes, entries made both before and after the entry of the orders in question. And this furnishes evidence rather that the entry of those orders was approved, than that it was disapproved.

[1.] We think, therefore, that the first ground of objection to the admission of the book was not a sufficient one.

[2.] And we say the same of the second. What law is there that requires that the minutes should show at what *place* the Court met? None. And as the minutes are merely silent, as to the whereabout of such place, it is to be presumed that the Court met at the place where it ought to have met. The amount of the Clerk's evidence is no more than that he does not know at what place the Court met.

House offered to prove his alleged contract with the Inferior Court, by parol evidence, viz: by the testimony of E. H. Worrell. This testimony detailed what was said by House, or his Attorney, and what was said by the Court, at a partic-

ular session of the Court, in reference to House's building the bridge in question.

This testimony was objected to by the defendants, but was admitted by the Court.

[3.] Ought it to have been admitted? We think that it ought to have been.

The second section of the Act of 1845, relating to the power of the Inferior Court, in reference to bridges, amongst other things, declares what follows: "The Justices of the Inferior Courts of the several counties of this State, or a majority of them be, and they are hereby authorized to contract for the building and keeping in repair of public bridges, for such time and in such way as to them shall seem most advisable, either by letting the same to the lowest bidder, hiring hands for that purpose, or in any other way that to them may appear right and proper."

This is declaring that the Justices of the Inferior Court shall have the general power to contract, in reference to the building of bridges. And a general power to contract, is a power to contract by parol, as well as by other modes. Such is the construction of the power to contract given in acts of incorporation; such has been the construction applied by this Court to the power of the Justices of the Inferior Court, to build court-houses, &c.—this Court having held that promissory notes signed by such Justices, but given in execution of that power, bound the Court, and not the individuals composing the Court. *Ghent et al. vs. Adams*, (2 *Kelly*, 216.)

Indeed, is not a contract made "by letting" the work "to the lowest bidder," necessarily, almost, a contract by parol? And letting the work to the lowest bidder, is one of the expressed modes in which the Justices of the Inferior Courts may contract.

Minutes of a Court are scarcely the place for evidence of a contract made by the Court. These, in strictness, speak the will or the language of the Court only.

When they also speak that of the other contracting party,

they become, to that extent, something over and above min-- utes—the minutes of a Court.

The next question is, whether Marshall, Leonard and Max- well, three of the Justices of the Inferior Court, were compe- tent to testify on the part of the Justices of that Court, the plaintiffs in error? The Court below held that they were not, and we think, held so erroneously.

[4.] These persons had no interest, whatever, (except as citizens,) in the event of the suit. In their private capaci- ties, they were not parties to the suit, nor did they incur any risk of having to pay the costs. The Statute of *Anne* does not subject the members of a corporation to costs, but only the corporation. (*Schley Dig.* 344.)

But in the case of *The Central R. R. B'k'g. Co. vs. Hines, Perkins & Co.* decided at Savannah, January, 1856, this Court held, that even a party, if free from interest, was com- petent for his co-party.

In respect to the question, whether the answer to the *man- damus nisi* was evidence for the parties answering, we merely say that the answer, in so far as it denied the relator's case, had the effect to cast upon him the *onus* of proving his case.

The new trial which is granted, is granted on the ground of the exclusion of Marshall and others, as witnesses.

That Worrell was incompetent, was a point not insisted on.