WARREN AKIN, plaintiff in error, *vs.* THE ORDINARY OF
BARTOW COUNTY, defendant in error.

| 54 | 59 |
|----|----|
| 88 | 537 |
| 54 | 59 |
| 94 | 217 |
| 54 | 59 |
| 108 | 560 |
| d109 | 477 |

1. Where, by act of the general assembly, of December 17th, 1861, the county of Bartow was authorized to issue bonds for the support of the indigent families of the soldiers of the Confederate States, and by another act, passed on February 23d, 1866, the justices of the inferior court of said county were authorized to settle or compromise the bonds issued under authority of the first act, this second act was a distinct recognition of the legality of the same.

2. The borrowing of money by a county and appropriating the same for the support of the indigent families of the soldiers of the Confederate States, and other needy persons, cannot be considered, in a legal sense, as having been done in aid of the rebellion.

3. Where an amendment had been made to the plaintiff's declaration, pending the litigation, without objection, it was not proper for the court to nullify, *ex mero motu,* the effect of said amendment by its charge.

4. Declarations in the statutory forms may be amended as other declarations.

5. An amendment relates back to the commencement of the suit. That the suit, had it been commenced at the date of the filing of the amendment, would have been barred, is no ground to hold that the case as made by the amendment was barred, provided it was proper to be allowed.

6. Contracts with a county must be in writing and entered on the minutes of the court of ordinary.

7. Where orders were passed by the inferior court of the county of Bartow, and entered on the minutes of that court, authorizing and directing certain bonds to be issued, and the same were issued in pursuance thereof, and delivered to the plaintiff, who paid to said county, or its authorized agent, the money therefor, which was received and appropriated to its use, such entry on the minutes was a compliance with the 493d section of the Code, and said bonds were valid obligations on the county.

8. The plea of *non est factum* may be filed after the first term, especially when a sufficient reason is shown therefor.

9. A request to the court to charge should state the principle of law applicable to the facts of the case, without attempting to draw any inferences or conclusions therefrom for the consideration of the jury.

10. Although the court may refuse to give a charge in the language requested, because objectionable, still it is its duty to instruct the jury as to the law applicable to the facts of the case, especially when its attention is called thereto.

County matters. Rebellion. Contracts. Consideration. Illegality. Amendment. Practice in the Superior Court. Statute of limitations. *Non est factum.* Pleadings. Charge of Court. Before Judge UNDERWOOD. Bartow Superior Court. September Term, 1874.

This case is reported in the decision.

WARREN AKIN & SON, for plaintiff in error.

W. T. WOFFORD, by W. H. DABNEY, for defendant.

WARNER, Chief Justice

This was an action brought by the plaintiff against the defendant, in the statutory form, on two bonds, signed by Godfrey, clerk of the inferior court, and Haire, county treasurer, one for the sum of $2,500 00, payable to the plaintiff or bearer, dated 25th February, 1863, and payable on the 25th of February, 1864, with interest at the rate of six and a half per cent. per annum from the date thereof. It is recited in the face of the bond that the plaintiff had paid into the treasury of Bartow county the sum of $2,500 00 for the support of soldiers' families, in accordance with the provisions of an order passed by the inferior court of said county on the 6th day of January, 1863, which sum of money the said county of Bartow promised to pay said plaintiff or bearer, as before stated. The other bond was for the sum of $1,500 00, dated 29th September, 1862, and payable 1st of January, 1864, with interest at the rate of seven per cent. per annum, containing the same recitals therein as the other bond, except that it was issued in accordance with the provisions of an order of the inferior court of said county, passed on the 26th of February, 1862. There was a payment on the first mentioned bond, made by the treasurer of said county, of $636 13, and on the last named bond a payment of $250 00, made on the 14th of February, 1865. The defendant pleaded that said bonds were given in aid of the rebellion, and at a subsequent term of the court, filed a plea of *non est factum*, to the filing of which last plea the plaintiff objected, which objection was overruled by the court, and the plaintiff filed his exception thereto on the record. During the pendency of the suit, the plaintiff amended his declaration

as follows, but the time the amendment was made does not appear in the record:

"And your petitioner avers that the bond dated the 29th day of September, 1862, was issued under and by virtue of an order of the inferior court of said county of Bartow, passed on the 26th day of February, 1862; and the bond dated the 26th day of February, 1863, was issued under and by virtue of an order passed by the inferior court of said county, on the 6th day of January, 1863; that each of said orders was in writing, and entered on the minutes of said inferior court; and that said orders required said bonds to be signed by the clerk of said inferior court and by the county treasurer; and each of said bonds was so signed under the seal of said court; that your petitioner loaned to said county $1,500 00 on the 29th day of September, 1862; and he loaned to said county, on the 25th day of February, 1863, $2,500 00, and said sums of money were entered on the books of the treasurer of said county at the time it was loaned by your petitioner to said county; and said money was loaned by your petitioner to said county, and by said county used alone to support the destitute widows, wives and little children of soldiers and others, and which wives, widows and little children were dependent for support on public and private charity, and they had to be fed or starve; that humanity required that said wives, widows and little children should be fed, and it was the duty of said county to feed them; that the money so loaned by your petitioner was used by said county of Bartow to pay for corn and meat to feed said destitute poor; and when your petitioner loaned said money to said county he was informed that it was to be used to support all the poor of said county; and your petitioner avers that at the time said bond for $1,500 00 was issued, dated the 29th day of September, 1862, there was no law requiring contracts to be entered on the minutes of the inferior court; and at the time the bond for $2,500 00 was issued, dated the 25th day of February, 1863, your petitioner had no control over the minutes of the inferior court, and could not enter the said

bond on said minutes; that if it was the legal duty of said inferior court to enter said bonds on the minutes of said court, and it was not done, the failure to discharge the duty enjoined by law, a duty over the discharge of which your petitioner had no control, it would be a fraud to allow said county to refuse to pay a just debt because the officers and agents of said county refused or neglected to perform their legal duty; and your petitioner avers that when the bond for $1,500 00 was sold to your petitioner it was entered on the books of said inferior court; that said bond was sold to your petitioner for $1,500 00; and when the bond for $2,500 00 was dated and delivered to your petitioner, it was entered on the books of the inferior court; that said bond for $2,500 00 was sold to your petitioner, and each of said entries was made in writing on said books of said inferior court; and your petitioner avers that he paid the money to said inferior court for said bonds in good faith, and had no idea, or notice, or knowledge, that said bonds were not entered on the minutes, or that the money paid for said bonds by your petitioner was to be used for illegal purposes; and the charge that said bonds were issued to aid the rebellion against the United States, in the plea filed in defense of said case, is wholly and entirely untrue so far as your petitioner knows or believes; and your petitioner has applied to the ordinary of said county to enter said bonds on the minutes kept by him, and he received said bonds and promised to enter them on the minutes, but afterwards refused to do so, saying that he had made no contracts and could not enter said bonds on the minutes; and your petitioner avers that the refusal to enter said bonds on the minutes is intended to aid in preventing your petitioner from collecting money justly and legally due him, and which the ordinary knows was loaned by your petitioner to said county, and which is wrongfully withheld from your petitioner; and to allow said ordinary to withhold what is justly due your petitioner, under any technical rule of law, would be to allow him to insist on law to practice a fraud; and your petitioner insists that he is entitled to the value of the money loaned to

the inferior court for said county, with interest on the same, even though said court had not entered said contract on the minutes of said court as required by law."

On the trial of the case, the jury, under the charge of the court, found a verdict for the defendant. The plaintiff made a motion for a new trial on the ground that the verdict was contrary to law, contrary to the evidence, and because the court erred in its charge to the jury, and in refusing to charge as requested, as set forth in the record, which motion was overruled and the plaintiff excepted. The following facts were proved by the respective witnesses who were sworn on the trial of the case :

Arthur Haire testified as follows : Has examined the county bonds upon which the case is predicated; his signature to the same, as county treasurer, is genuine. He signed them as treasurer of Bartow county, by and under the authority of an order, or orders, passed by the inferior court of said county— one on or about the 26th day of February, 1862, and one on the 6th day of January, 1863; knows that he saw such orders on the minutes of said court, and if his memory serves him right, the then clerk of said court showed him the minutes, and which contained in said orders directions to have the bonds printed. Saw the orders on the minutes, and the same were regularly signed, etc. The orders were entered in a book known and kept as the minutes of the inferior court for county purposes. Has examined the original bonds, one dated September 29th, 1862, payable to Warren Akin, for $1,500 00, the other dated February 25th, 1863, payable in the same manner, for $2,500 00. They were signed by him as the treasurer of the county, by the authority of and under an order of the inferior court, or orders of said court, for the court passed orders at different times, to sell bonds, as the necessities of the county required, to raise money for the support of the needy of said county. He believes each of the bonds was signed on the day named therein. They were issued by authority of orders passed by the inferior court as recited in their faces. The families of the men who were

then in the service of the Confederate States or of the state, or who had died or were killed, and who were needy, were supported with provisions supplied by the sale of said bonds ; and others who were destitute, no doubt, also participated therein.    Does not think the families of all soldiers were furnished, but only those which were needy.    Thinks others who did not belong to the families of soldiers, who were poor and needy, were supplied.    Is satisfied that said orders were passed by the inferior court of Bartow county, at the court-house in said county, on the day as stated upon the face of each of the bonds.    The dates as therein recited were ascertained by a reference to the minutes aforesaid.    Does not certainly know that Warren Akin's name was mentioned in either of said orders, but it may have been.    Thinks that the names of the persons to whom to be issued and the amounts of the bonds were set forth in some of the orders, but cannot now specify which.    Godfrey, the clerk of the inferior court, and witness, never issued any bonds without an order for that purpose.

Benjamin F. Godfrey testified as follows : Signed the bonds shown him as clerk of the inferior court of Bartow county, and affixed the seal of said court thereto.    The bonds were signed and issued under authority of orders of the inferior court.    The orders were entered on the minutes of said court for county purposes.    The book containing said minutes was left by him in his office, which was burned, and he has not seen it since.    The soldiers' families which were mentioned in the bonds, were the wives, widows and children of the poor soldiers then in the army of the Confederate States, and of those soldiers who had died or were killed, and whose families were unable to feed themselves, and were dependent on charity for a support.    No other kind were supported by the county.    No children of soldiers over twelve years of age were allowed anything from the county.    Only the needy and destitute families were supplied.    Witness went round through the county to ascertain the number of the destitute, and found as many as six children under twelve years of age

Akin *vs.* The Ordinary of Bartow County.

in one family, who were entirely dependent on the county for a support. The money mentioned in said bonds was borrowed to support these poor and needy families. Thinks there was a different fund raised to support the other poor of the county; of which there were but few.

Warren Akin, the plaintiff, testified as follows: Having more Confederate money than he needed to meet current expenses, he desired to loan it out on as long time as possible, so that it would make him something. Does not remember the particulars fully about his loaning the money on the first bond, the one dated in 1862, but has a distinct recollection about the loan made on the second, dated in 1863. He was anxious to lend the money, and offered it at six and a half per cent., if the county would take it for one year. The first conversation he had about the last bond was with Mr. Mc-Murry, then one of the justices of the inferior court. Afterwards he was informed that the county would take the money upon the terms proposed, and thinks this information was given by McMurry. He was also directed to call on Arthur Haire, then treasurer of the county, and the bond would be ready, or witness could get it and pay the money to the treasurer. Does not remember whether this information or direction was given him in the court-house or elsewhere, nor can he say with certainty who gave it, but thinks it was done by Mr. McMurry, or by the court when in session. Knows that he called on Arthur Haire, the treasurer, and paid him the $2,500 00, and received from him the bond, but whether he received the bond at the time the money was paid or afterwards, he cannot state. Is of the impression that he received the bond when he paid the money. When witness loaned the money and received the bonds he thought everything the law required to make the bonds legal and valid had been done, and he does not think he made any inquiry about it. When he loaned the money he understood that it was borrowed to feed all the poor and destitute of the county. No intimation was made to him that it was to aid the rebellion, and he had no idea or thought that it was for any such purpose, or for

any other purpose than to feed the poor widows, wives and little children who had to be fed or suffer. He did not then, and does not now, believe that it was intended to aid the rebellion. In the spring of 1861, (thinks in May,) he did make a speech to the inferior court of the county, and urged them to make provision to feed and take care of the wives and children of the poor men who volunteered in the Confederate service, and stated in his remarks that those who went to fight for the south should know that while they had an enemy in front, they had a friend in the rear. This was at the beginning of the war. He did encourage volunteering all he could. He made a speech, he thinks on March 4th, 1862, for the same purposes. He did all he could to avoid a draft in his county. But when he loaned the money for the first bond, dated September 29th, 1862, the first, if not the second, conscript law had been passed. Knew the first had been in operation for some months, taking every man not exempted, who was under thirty-five years of age, into the military service, and all volunteering had ceased; and before the bond dated in 1863, was issued, the second conscript law had been in operation some months, forcing all not exempted, who were under forty-five years of age, into the military service. The minutes of the inferior court having been lost, and witness not knowing whether the bonds had been recorded, carried them to the ordinary and requested him to record them. He took them and said he would do so, and afterwards declined to do it.

1. By a special act of the general assembly, passed on the 17th day of December, 1861, the county of Bartow was authorized to issue bonds of the county for the support of *the families* of indigent volunteers, who are absent in the army, or who may have been killed, or died in the service, or who may have been wounded or disabled in the service, and for any other county purpose. By another special act of the general assembly, passed on the 23d of February, 1866, the justices of the inferior court of Bartow county were authorized to settle or compromise the bonds of that county then due and

unpaid, and to issue new bonds for the same, the preamble to which act recites: Whereas the justices of the inferior court of the county of Bartow issued, in accordance with law, the bonds of said county, on which they borrowed money to support the wives, widows, mothers and children of indigent soldiers, and other poor of the county, and some of the bonds are due and unpaid, and owing to the currency said justices received for said bonds, justice requires that the whole amount apparently due thereon, should not be paid: Therefore, be it enacted that the justices of the inferior court be authorized to compromise the same, and issue new bonds therefor, etc. This was a distinct recognition of the legality of the bonds which had been issued by the county of Bartow for the purposes specified by the general assembly of 1866.

2. The court charged the jury, "If you find that the money loaned, as expressed on the face of the contract, to be for the support of soldiers' families, this is sufficient to put the lender of the money, or purchaser of the bond, on inquiry, and is *prima facie* evidence that the contract was made in aid of the rebellion." This charge of the court, in view of the evidence contained in the record, was error. The borrowing money by the county and appropriating the same for the support of *indigent* soldiers' families, and other needy persons, cannot be considered, in a legal sense, as having been done in aid of the rebellion. The object and purpose was to relieve the immediate wants of suffering humanity, no matter from what cause produced. If there were women and children of *indigent* soldiers in the county actually suffering for the common necessaries of life, it was the duty of the county to have provided for their immediate wants as an act of humanity recognized by all civilized nations, and if the lender of the money, had have known it was to be appropriated for that purpose, it would not have made the contract illegal, either by human or divine law. The hungry and the destitute should be fed and clothed when in a state of actual suffering, at all times, and doing that was in no proper sense aiding the rebellion, unless preventing the women and children of indigent soldiers from

perishing from starvation by feeding them, should be so considered.

3. The court also charged the jury "that the law requires that the contract shall be in writing and entered on the minutes of the court, and this fact it is necessary to allege and prove. If this was not done in the original declaration, the form used in this action can only be amended so as to make the allegation, and by the amendment make that form thus amended conform to the form prescribed in the Code." The court further charged the jury to the effect that the plaintiff's amendment to his original declaration, as set forth in the record, could not be allowed, and if it could, if it was not filed prior to the first of January, 1870, it would be barred by the statute of limitations of 1869, and that if there was no contract entered on the minutes of the inferior court of Bartow county, in relation to the bond, which purports to have been issued after the first day of January, 1863, no recovery could be had on that bond. If we understand the charge of the court in relation to the amendment of the plaintiff's declaration, it held that as it was originally commenced in the statutory form, the amendment was not allowable. But the declaration had been amended without objection, so far as the record shows, and it was not a proper subject matter for the charge of the court, at the trial of the case.

4, 5. The court, however, erred in holding that the plaintiff's original declaration was not properly amended as set forth in the record. Since the adoption of the Code this court has repeatedly held that declarations in the statutory form could be amended in the same manner as other declarations. If a plaintiff should sue on a promissory note, in the statutory form, which the law requires to be stamped, and the note could not be read in evidence for the want of a stamp on it, the plaintiff might amend his declaration by adding the common count for money had and received of the plaintiff, or paid by the plaintiff for the use and benefit of the defendant, and, on proof thereof, would be entitled to recover. So in this case, inasmuch as the records of the inferior court had

Akin *vs.* The Ordinary of Bartow County.

been destroyed by fire, the plaintiff may have thought it doubtful whether he could prove that the contract with the county had been entered on the minutes of the court as required by law, and therefore he amended his declaration, alleging the facts, and the reception of the money specified in the bonds by the defendant, and the appropriation of it to its use and benefit, so as to enable him to recover the money advanced, laid out and expended to and for the use and benefit of the defendant, and such is the legal effect of the plaintiff's amended declaration; and when so amended, it related back to the commencement of the suit as a part of the original cause of action, and was not barred by the statute of limitations of 1869, and the court erred in so charging the jury.

6. The charge of the court, that the contract should be in writing and entered on the minutes of the court, was good law if it had been applicable to the facts proved by the evidence in the case before it.   The 493d section of the Code declares that all contracts entered into by the ordinary (formerly by the inferior court,) with other persons in behalf of the county, must be in writing and entered on their minutes. In the case of *Prichett vs. The Inferior Court of Bartow County*, (46th *Georgia Reports*, 462,) a suit was brought on a bond similar to the bonds sued on in this case.   The defendant demurred to the plaintiff's declaration, and this court sustained the demurrer on the ground that it did not appear from the plaintiff's declaration that the contract had ever been entered on the minutes of the court, and we now re-affirm the ruling of the court in that case on the statement of facts contained therein.

7. But the plaintiff's declaration in the case now before us, and the evidence contained in the record, makes an entirely different case from that.   It appears from the record now before us that orders were passed by the inferior court of Bartow county, and entered on the minutes of that court, authorizing and directing the bonds now sued on to be issued, and that the same were issued in pursuance of such orders and directions, and delivered to the plaintiff, who paid to the de-

fendant or to its authorized agent, the money therefor, which the defendant has received and appropriated to its use. The entry on the minutes of the inferior court of the orders authorizing and directing the bonds to be issued, was a compliance with the requirements of the 493d section of the Code, and when issued as authorized and directed by said orders, and the money received therefor, as shown by the evidence in the record, it became an *executed contract*, which was binding in law upon the county of Bartow. The charge of the court in relation to this point in the case, in view of the evidence before it, was error.

8. The plea of *non est factum* may be filed after the first term of the court, especially when a sufficient reason is shown therefor : *Stanton vs. Burge, 34th Georgia Reports,* 435. There was no error in allowing that plea to be filed, on the statement of facts disclosed in the record.

9. The requests of the plaintiff to charge the jury were objectionable, because the same were argumentative and assumed facts and conclusions which it would not have been proper for the court to have given for that reason. A request for the court to charge should state the naked question of law applicable to the facts of the case, without attempting to draw any inferences or conclusions therefrom for the consideration of the jury.

10. Although the court may refuse to give a charge in the language requested, because it is objectionable, still, it is the duty of the court to give in charge to the jury the law applicable to the facts of the case, especially when its attention is called to the questions involved. The court should have charged the jury, in this case, that if they believed from the evidence that an order was entered on the minutes of the court authorizing and directing its clerk and treasurer to issue the bonds and receive the money therefor, then the acts of the clerk and treasurer in relation thereto, when acting within the scope of their authority, would be binding on the county. After a careful and laborious review of the evidence in the record and the proceedings had on the trial of the case, our

judgment is, that under the law and the evidence contained in the record, the plaintiff was entitled to have recovered from the defendant the proven value of the Confederate money which it received from him for the bonds, after deducting the payments made thereon, with interest on that amount at the rate specified in each bond, and that the court erred in overruling the motion for a new trial.

Let the judgment of the court below be reversed.