THE COMMISSIONERS OF BARTOW COUNTY *vs.* NEWELL.

|64|699|
|---|---|
|94|217|
|64|699|
|108|560|

1. The Confederate congress was the legislative department of a *de facto* government recognized by all of the courts of Georgia while it lasted; and acts published by authority of that government, while in dominion of the territory of this state, will be recognized by its courts whenever they are necessary to throw light upon any litigation therein. The government being overthrown, and there being no records by which to establish such acts, parol testimony of a witness that he was a member of the Confederate congress, that as such he became possessed of certain pamphlets which contained the acts of that body, and that they were genuine, was sufficient to admit the printed acts in evidence. Especially was such admission not ground for new trial, where it does not appear that the complaining party was hurt thereby.

2. Bonds issued by a county in 1862 for the purpose of raising money for the support of the indigent families of the soldiers of the Confederate States were not in aid of the rebellion.

3. Where one who was a citizen of another state but was residing in Georgia, and who moved north in 1862, left money consisting of bills of local banks, in the hands of an agent for investment, and the latter invested in county bonds, such a transaction was not ille-

gal within the meaning of the act of congress of 1861, which prohibited commercial intercourse between citizens of insurgent states and those of other parts of the United States.

Evidence. Confederate States. Laws. Bonds. County Matters. Contracts. Before Judge McCutchen. Bartow Superior Court. July Term, 1879.

In 1862 Newell was residing in Georgia, though he claimed Illinois as his home, and went to that state during the said year. When he went away from Georgia, he left some money, consisting of bills of the Central Railroad & Banking Company and the Georgia Railroad & Banking Company in the hands of one Howard, as his agent, for investment. In 1863 the county of Bartow issued bonds in order to raise money for the support of the indigent and needy families of the soldiers of the Confederate army, who could not support themselves. It appears that there was an ordinary pauper fund in the county raised by taxation, but it became inadequate, owing to the increase of poor families resulting from the absence or death of men in the war, and this means was adopted of providing for such families. Howard, as agent for Newell, purchased two of the bonds so issued. On these Newell brought suit. On the trial, Warren Akin, Esq., testified that he had been a member of the Confederate congress, that as such he became possessed of certain pamphlets (tendered to him) and that they contained the acts of that congress, and were genuine. Upon this showing, two of the acts were allowed to be read, dated April 16th, 1862, and September 27th, 1862, respectively authorizing the president of the Confederacy to call out for military service men between the ages of 18 and 35 years, and between 35 and 45. This ruling was excepted to.

The jury found for plaintiff $226.47-100 principal. Defendants moved for a new trial, which was refused, and they excepted.

For the other facts see the decision.

A. JOHNSON, for plaintiffs in error.

WARREN AKIN, for defendant.

JACKSON, Justice.

Certain bonds were issued by the county of Bartow during the war between the Confederate and the United States, in 1862, and this suit was brought against the county on two of them; the jury found for the plaintiff, and the defendants excepted to the refusal of the court to grant a new trial. The bonds were issued to support the poor families of soldiers in the Confederate army, and the widows and orphans of those who had died in the service.

Three points are made in the motion for a new trial—first, that the court erred in admitting in evidence pamphlets purporting to be acts of the Confederate congress without sufficient proof; secondly, that the bonds are illegal because given in aid of the Confederacy; and thirdly, because the plaintiff, as a citizen of Illinois, was prohibited from commercial intercourse with the insurrectionary or insurgent states by the act of congress of 1861, codified in revised statutes of the United States, §5301, and the contract was therefore illegal as to his right to recover on the bonds.

1. Mr. Warren Akin testified that the pamphlets contained the acts of the Confederate congress, that he had been a member thereof and got them as such, and knew that the printed pamphlets were genuine. It is not shown in the record what parts of these laws injured the plaintiff, or in what manner the defendants were affected or hurt by them under the ruling in 54 *Ga.*, 59, and therefore we would not interfere to grant a new trial on this ground, even if these laws or acts were improperly admitted. The party complaining must show that he was hurt by the ruling in order to secure a new trial on any given ground therefor. But these acts were the acts of the congress of a *de facto* government recognized by all of the courts of Georgia,

published by the authority of that government while in dominion of the territory of this state, and will be recognized by her courts now whenever necessary to throw light upon any litigation therein. The government being overthrown, there is no record of them whereby they could be established by better proof ; therefore Mr. Akin's testimony as to the genuineness of the printed pamphlets is as good as could be had, and in any view we can take the court admitted them properly so far as the record discloses what transpired, and in the anomalous condition of things which exists, arising from the war between the states and its consequences.

2. In so far as the legality of the bonds is assailed because issued in aid of the suffering families of the living and dead Confederate soldiery we need only say that the question is not open with us. It was settled in a case involving this class of Bartow county bonds which is reported in 54 *Ga.*, 53, cited above, and their illegality as being in aid of the Confederacy was there held unsound and their binding force on the county, so far as this point is concerned, was upheld.

3. So that the single question remains, does the act of the United States congress in 1861 prevent the plaintiff's recovery? That act is as follows : " Whenever the president in pursuance of the provisions of this title, has called forth the militia to suppress combinations against the laws of the United States and to cause the laws to be duly executed, and the insurgents shall have failed to disperse by the time directed by the president, and when the insurgents claim to act under the authority of any state or states, or in the part or parts thereof in which such combination exists, and such insurrection is not suppressed by such state or states, or whenever the inhabitants of any state or part thereof are at any time found by the president to be in insurrection against the United States, the president may, by proclamation, declare that the inhabitants of such state, or any part or section thereof, where such insurrection exists,

are in a state of insurrection against the United States, and thereupon all commercial intercourse by and between the same and the citizens thereof and the citizens of the rest of the United States shall cease and be unlawful so long as such condition of hostility shall continue, and all goods and chattels, wares and merchandise, coming from such state or section into other parts of the United States, or proceeding from other parts of the United States to such state or section, by land or water, shall, together with the vessel or vehicle conveying the same, or conveying persons to or from such state or section, be forfeited to the United States." Rev. Statutes U. S., §5301.

The plaintiff seems to have been resident in Georgia and moved north in 1862, leaving Georgia state money, being Central and Georgia Railroad bank bills, with an agent for investment here; and this agent invested these bills in the bonds of the county of Bartow sued on now. We can see nothing illegal or contravening the paragraph of the revised statutes of the United States in the purchase of these bonds by this plaintiff. The whole reason and spirit and policy of the act of congress of 1861, re-enacted and codified as cited, was to prevent northern goods from coming south so as to add to the material resources of the Confederacy, and to prohibit southern produce from going north to pay for these goods; but it cannot be construed to apply to a case where a northern man, resident here, returned home, and leaving local funds here, which would have been wholly useless and would have perished north, directed their investment in something, and his agent put them in these charitable bonds. The county ought to pay the bonds.

Judgment affirmed.