## JONES, ordinary, v. BANK OF CUMMING.

A petition for a mandamus to compel the ordinary of a county to issue a. warrant to its treasurer in favor of a contractor, who had built and completed a court-house for the county, in pursuance of a written con- tract between the ordinary and the contractor, and to deliver such warrant to the petitioner, who had furnished the money to the con- tractor for the erection of the building, under a contract between peti- tioner and the contractor that the latter would give orders on the ordi- nary for the delivery to the petitioner of warrants issued by the ordi- nary for amounts due the contractor, was subject to the ground of a demurrer that set up that it did not appear from the petition that either the contract between the ordinary and the contractor, or the writ- ten order given by the latter to the petitioner on the ordinary for the warrants, and accepted in writing by the ordinary, was entered on the minutes of the ordinary, although it did appear that the contractor had fully performed his contract and that the building had been ac- cepted by the ordinary and used ever since by the county, and that a fund for the payment of the cost of the erection of the court-house had been levied and collected by taxation, and a sufficiency thereof to pay the warrant was in the county treasury. ·

Submitted January· 14,—Decided July 25, 1908.

Mandamus. Before Judge Gober. Forsyth superior court. Oc- tober 19, 1907.

In August, 1907, the Bank of Cumming applied for a manda- mus to compel H. V. Jones, as ordinary of Forsyth County, to issue an order or warrant on the treasurer of such county for the sum of $3,600, and to deliver the same to the petitioner. The substance of the petition, in so far as here material, was: On January 9, 1905, Jones, as ordinary, entered into a written con- tract, a copy of which was attached to the petition, with Fred `Wagener, under the terms of which Wagener was to build for the County of Forsyth a court-house, according to drawings and spec- ifications furnished by a named architect, for the price of $24,000,

which sum was to be paid in six different installments as the work progressed, the ordinary to issue warrants on the county treasurer for the amounts of the installments, and the sixth installment to be paid when the building should be fully completed and accepted by the architect and the ordinary. The building was to be completed by December 1, 1905, but the time was extended to March . . , 1906. While the work was in progress, and up to the time of its completion, the bank furnished Wagener with money to enable him to procure material and carry on the work of building, under an express contract with him that the county warrants to be issued to him in payment for the work should be delivered to the bank, collected by it, and applied in payment of any and all advances made by the bank to him. On January 5, 1906, Wagener gave to the bank a written order to Jones, as ordinary, requesting him to pay to the bank the two remaining warrants which would be due Wagener as the 5th and 6th payments on the building. Jones, as ordinary, accepted this order in writing, and therein agreed to issue warrants for the 5th and 6th payments, as soon as due, and deliver the same to the bank. Upon the faith of such order and the acceptance of the same by Jones, as ordinary, the bank advanced to Wagener "the full amount coming to him upon said contract." Wagener completed the building in accordance with the terms of the contract about March 10, 1906, and it was accepted by the architect and the ordinary, and the ordinary and the other officers entitled by law to offices in the court-house moved into the building, took possession of the same, and it has been occupied and used as the court-house of the county ever since. The ordinary issued and delivered to the bank a warrant on the county treasurer for the amount due Wagener on the fifth payment. but refused to issue and deliver to it a warrant for the amount due Wagener on the sixth and last installment, though the bank made written demand upon the ordinary to issue and deliver to it such warrant for the last installment, and though the money to pay the same had been raised by taxation during the year 1905 and was then in the treasury and had been since January 1, 1906.

The defendant demurred to the petition, and filed an answer denying many of its material allegations. One of the grounds of demurrer was, that it did not appear from the petition that either the contract between the ordinary and Wagener for the erec-

tion of the court-house, or the order given by Wagener to the bank and accepted by the ordinary, had ever been registered or entered upon the minutes of the ordinary. By consent of the parties, the case was submitted to the judge, to be heard and decided by him, in vacation, on all questions of law and fact. The judge overruled the demurrer, and, upon the evidence, granted a mandamus absolute, requiring the ordinary to issue and deliver to the bank a warrant on the treasurer of the county for the sum of $3,600, with interest, the amount due Wagener on the sixth installment; to which rulings Jones, the ordinary, excepted.

*Brooke & Henderson,* for plaintiff in error.

*H. L. Patterson,* contra.

FISH, C. J. (After stating the foregoing facts.)

In the view we take of the case, it is necessary to deal with only one point, and that is the one raised by the ground of demurrer that it did not appear from the petition that either of the contracts relied on as a basis for the mandamus was entered upon the minutes of the ordinary. It appears from the judgment rendered that the trial judge was of the opinion, that, as the bank had furnished the money to Wagener to enable him to erect the court-house, the ground in question of the demurrer was not meritorious. In view of the prior decisions of this court, we are constrained to differ with our learned brother of the trial bench, who was probably misled by the language of Justice Lewis in *Milburn* v. *Glynn County,* 109 *Ga.* 473 (34 S. E. 848), where, at page 476, he said: "If it were an original proposition before this court, the writer, speaking for himself alone, would not be prepared to say that such an omission of duty upon the part of county authorities in failing to comply with the statute requiring the record of a contract made with the county would operate to render the contract absolutely void. A distinction should be drawn between the exercise of powers by municipal or county authorities that are ultra vires, and the omission of such officers to conform strictly to the law touching the execution of a contract they clearly have power to make. In this case the duty imposed by the law to enter the contract upon the minutes devolves upon the county officials themselves. The party contracting with the county has no custody or control over its minutes; and after making his contract in accordance with law, and complying strictly with its terms, it would in-

deed seem a hard rule that he should be deprived of his compensation, simply because of an omission of duty on the part of a county official. I am inclined to think that a safer rule to adopt in the adjudication of such a case would be to construe the failure to comply with such a provision of the law a mere irregularity, especially as to persons who have acted in good faith; and, from the limited investigation made on the subject, I think that the weight of authority sustains this view." Authorities are then cited tending to uphold the individual view expressed by the learned Justice, who then proceeded as follows: "But the question involved in this case is not an open one before this court. In *Pritchett* v. *Inferior Court*, 46 *Ga.* 462, it appears that a suit was brought against a county on a bond given, after the adoption of the code, by the justices of the inferior court. It was there held that the pleadings must show affirmatively that the contract was entered upon the minutes of the inferior court, and that the contract would not be valid under section 527 of the code, if good in other respects. Section 527 of the code, referred to in that decision, is in the exact language of section 343 of the present Political Code, except that the word ordinary is substituted for justices of the inferior court. The decision in *Akin* v. *Ordinary of Bartow County*, 54 *Ga.* 59, does not indicate any modification of this rule laid down in the *Pritchett* case above cited. On the contrary, it is expressly declared that contracts with the county must be in writing and entered on the minutes of the court of ordinary; and it will be seen in the opinion, on page 69, that the principle decided in the 46th *Ga.* was adhered to and reaffirmed. In that case it was held that there had been a compliance with the 493d section of the code." Section 493 of the Code of 1873, referred to in the *Akin* case, was the same as section 527 of the Code of 1863 and as section 343 of the present Political Code. That section declares, "All contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered on their minutes." In *Pritchett's* case the action was brought in the short, or Jones, form of pleading, on a bond issued to plaintiff's intestate, Conyers, by the inferior court of Bartow County, in behalf of the county. A copy of the bond was attached to the declaration. The following recital appeared in the bond: "Be it known, that the County of Bartow owes to Bennett H. Conyers or bearer the

sum of nine thousand seven hundred and sixty-five dollars, for the amount paid by him this day into the treasury of said county, for the support of soldiers' families, in accordance with the provisions of an order passed by the Inferior Court of said county on the 6th day of February, 1863, which sum of money the said County of Bartow promises to pay the said Bennett H. Conyers or bearer on or before the 1st day of January, 1864," etc. "In statutory complaint, the writings declared upon, copies thereof being annexed to the declaration, are a part of the pleadings," etc. *Allen* v. *Young, 62 Ga.* 617. So, in *Pritchett's* case it was, in effect, alleged in the declaration that the county had received the full benefit of the consideration paid by plaintiff's intestate into the county treasury, which moved the county authorities to execute the bond. Moreover, the justices of the inferior court of Bartow County were expressly authorized to issue the bond sued on, by the act of Dec. 17, 1861 (Acts 1861, p. 30) ; and the act of Feb. 23, 1866 (Acts 1865-6, p. 41), authorizing such justices to settle or compromise the bonds issued under authority of the first-mentioned act, was a distinct recognition of the legality of the same. *Akin* v. *Ordinary of Bartow County, 54 Ga.* 59. The decision in the *Pritchett* case, sustaining the demurrer to the declaration, on the ground that it did not appear from the declaration that the bond sued upon had been entered upon the minutes of the justices of the inferior court, is an express ruling that the bond was not valid for that reason, though it might otherwise be a valid contract, and though it appeared from the declaration that the money for which the bond was issued had been paid by plaintiff's intestate into the county treasury, the county thereby getting the full benefit of the consideration for the issuance of the bond. The ruling in *Pritchett's* case has never been overruled or modified, but has been followed in *Akin* v. *Ordinary of Bartow County* and in *Milburn* v. *Glynn County,* supra, and also in *Spalding County* v. *Chamberlin,* 130 *Ga.* 649 (61 S. E. 533) ; though it did not appear in any of these cases, except *Akin's,* that the county had received the *full* benefit of the consideration of the contract sued upon, and in the *Akin* case it was held that the provisions of the statute were complied with by entering on the minutes of the inferior court of the county the order authorizing and directing the issuance of the

bond upon which the suit was based. It did not appear that the order had been so entered in *Pritchett's* case.

While the decision in the *Pritchett* case does seem, as said by Mr. Justice Lewis in the opinion in the *Milburn* case, to be a hard rule in a case of the present character, still a reason for so strict a construction of the statute may be found when we consider the purpose of the statute, as he there states it. He says: "The object of the law requiring an entry of such contracts upon the minutes is to give information easily accessible to the public, as to the character of contracts being made by the county authorities." And, we may add, it is desirable that this information should be accessible to the public before the party contracting with the county has entered upon the performance of his undertaking. It is obvious that if the contract can be withheld from the minutes and yet be enforceable against the county, when it has been performed by the other contracting party, this purpose of the statute could be defeated in any and every case in which the authority, or authorities, representing the county and the party contracting with it should desire to do so. Persons contracting with a county are presumed to know the law in reference to such contracts, and they can protect themselves against repudiation of the contract by the county, after performance on their part, by refusing to perform until the ordinary, or county commissioners, as the case may be, have complied with this requirement of the law; and can, if necessary, enforce compliance therewith by mandamus.

A careful reading of *Peed* v. *McCrary*, 94 *Ga.* 487 (21 S. E. 232), will show that there is nothing in that case in conflict with the ruling in *Pritchett's* case; but even if the two cases were in conflict, the older case would be controlling. In the case in 94 *Georgia,* it appeared that the treasurer of a county, upon the recommendation of the grand jury, borrowed $500 from McCrary, with which to defray lawful expenses of holding court. About a year subsequently, and after this treasurer had gone out of office, the judge of the county court, who had charge of the financial affairs of the county, drew a warrant on the then treasurer, directing him to pay to McCrary the $500 with interest thereon. Upon the refusal of the treasurer to pay the warrant, McCrary applied for a mandamus to compel him to pay the same. The treasurer answered, setting up that the county judge had no authority to draw

the warrant, and attacking the act establishing the county court. It appears from the statement of facts in the case, as reported, that the answer further alleged, "that while the ordinary may have instructed the former treasurer to borrow the $500 to defray lawful county expenses, there is no order or judgment of the ordinary on record, permitting or directing that this be done by the treasurer or any other person; and it is submitted that, had such order been made, it would have been illegal and void; for, while the constitution authorizes the General Assembly to confer the right and authority on counties to borrow money, no act of the General Assembly has been passed putting said constitutional provision in force." A mandamus absolute was sustained in that case; but it will be noticed that there was no contention that the contract between the former treasurer and McCrary, under the terms of which the latter loaned his money to the county, had not been entered upon the minutes of the ordinary, or upon the minutes of the county court.. And this court, in deciding the case, made no reference whatever to the law requiring contracts entered into by the ordinary with other persons in behalf of the county to be entered on the ordinary's minutes; but merely ruled as follows: "Although it may be true that the constitution, of its own vigor, does not confer power to borrow money by temporary loans to supply casual deficiencies of revenue, yet where the money of a lender has actually been applied to the legitimate uses of a county, that is, to objects to which county revenue may rightly be devoted, it is lawful to repay the loan out of the county treasury when funds for the purpose are on hand, with seven per cent. interest thereon." Nor was the point which we have decided is controlling in the present case involved in *Butts County* v. *Jackson Banking Co.*, 129 *Ga.* 801 (60 S. E. 149).

Our conclusion is that the court erred in overruling the ground of demurrer with which we have specifically dealt; and the judgment must, therefore, be reversed.

*Judgment reversed. All the Justices concur.*