## JONES, ordinary, *v.* BANK OF CUMMING.

1. Section 343 of the Political Code requires that all contracts entered into by the ordinary (or county commissioners having charge of the county affairs) with other persons in behalf of the county must be in writing and entered on their minutes. If the proper county authorities refuse to make the entry, mandamus will lie to compel them to do so, upon the application of a person authorized to institute the proceeding.

2. Where an ordinary entered into a written contract on behalf of the county for the erection of a court-house, but failed to enter it on the minutes, and the contractor in the progress of the work procured loans from a bank for the purpose of completing it, and gave written orders

to the bank authorizing it to receive the remaining warrants issued under the contract, the bank had such a special interest as authorized it to proceed by mandamus to compel the ordinary to enter the building contract on his minutes.

3. Where an ordinary made a contract on behalf of the county for the erection of a court-house, he was not authorized thereafter to accept written orders given by the contractor to a bank, from which the latter had borrowed money to use in connection with the contract, for the delivery of the warrants for the balance of the contract price to such bank, and thereby to bind the county.

4. Inasmuch as the ordinary was without authority to bind the county by such an acceptance as that indicated in the preceding headnote, it was not in law the contract of the county; and therefore the ordinary will not be required by mandamus to enter such an acceptance upon his minutes.

Argued October 19,—Decided November 24, 1908.

Mandamus.    Before Judge Gober.    Forsyth superior court.    August 24, 1908.

The Bank of Cumming filed its application for the writ of mandamus against Jones as ordinary of Forsyth county, alleging, in brief, as follows: The jurisdiction over county matters and the management of all county business in Forsyth county is vested in the ordinary. The defendant occupies that office and discharges its duties, as well as that of clerk of the court of ordinary, having no legally appointed and qualified clerk of that court. He had authority to make contracts on behalf of the county with other persons for building or repairing court-houses and other buildings, and it was his duty to enter upon his minutes all such contracts made by him on behalf of the county, and to keep them of file in his office. On January 9, 1905, and after complying with the regulations prescribed by law in such cases, he entered into a contract in writing on behalf of the county with one Wagener to erect a county court-house. Such contract was duly executed and signed by the contractor and by the ordinary on behalf of the county, and was filed in the office of the latter and left in his keeping as such, and became an official paper. A copy was attached to the petition. Upon the faith of such contract Wagener proceeded and procured materials and erected a court-house for the county at the site named, which court-house has been occupied by the ordinary and other officers of the county and used by the authorities for all county purposes for which it was intended, since March, 1906. Upon the faith of the contract, and relying

upon the legal presumption that the ordinary had discharged all his duties and complied with the law in regard thereto, the bank from time to time furnished and advanced to Wagener money with which to buy material and pay laborers for work on the court-house and to carry out his contract, receiving and accepting the county warrants as specified in the contract as payment and security. While the contractor was engaged in the work, and after the building was apparently nearly completed, he gave to the petitioner an order in writing directed to the ordinary, in which it was said, "You will please deliver to S. H. Allen, cashier of the Bank of Cumming, the two remaining county orders which shall be due me as the fifth and sixth payments on the court-house built by the undersigned for said county; and this shall be your authority for the same." Jones as ordinary of the county accepted this order in writing as follows: "The within order acknowledged and accepted; as soon as the amounts of the fifth and sixth payments are due, I will issue and deliver the county orders to the within mentioned authority." A similar order had been given by the contractor to the bank for the fourth payment, and had been accepted in like manner by the ordinary. The intention of all the parties to the transaction, in giving and accepting these orders, was that the bank should be secured thereby for the money furnished and to be furnished Wagener to enable him to carry out his contract, and that the bank should collect and receive the money on the warrants when paid, and be entitled to the rights of the contractor as to such warrants. Upon the faith of such order and acceptance the bank furnished to the contractor the full amounts for which the warrants were to be issued, or very nearly such amounts. All of the warrants have been issued and paid by the county treasurer, except that for the sixth or last payment amounting to $3,600. On information and belief it is alleged that Wagener is insolvent, and the amount due by him to the bank can not be realized from him by law. The ordinary refuses to issue the order for the sixth or last payment, and defends against an application to the court to compel him to do so, on the ground, among others, that the contract between himself, on behalf of the county, and Wagener, has never been entered upon the minutes, as required by law, and that the order and acceptance were not entered upon the minutes of the ordinary. De-

mand has been made upon him that each of these instruments be entered upon the minutes of the ordinary, and this demand has been refused. By amendment it was alleged, that the petitioner was informed by the ordinary that the court-house had not yet been fully completed according to the terms of the contract, but there was work still to be done thereon before the ordinary and the architect mentioned in the contract will receive the building, and under the contract they expected the contractor to do such work; that all the money loaned by the bank was used by the contractor in paying for materials purchased and used, and for labor done in the construction of the court-house; and that the ordinary failed to enter the contract on his minutes, as it was his legal duty to do.

The defendant demurred to the petition, and also answered it. The presiding judge certified that it was conceded on the hearing that there was no issue of fact, but only one of law. He made the mandamus absolute, and the respondent excepted.

*J. P. Brooke, L. A. Henderson,* and *James K. Hines,* for plaintiff in error. *H. L. Patterson* and *George L. Bell,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

"All official duties should be faithfully fulfilled, and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." Civil Code, §4867. Was there a legal duty on the part of the ordinary to enter on his minutes the contract for the building of the court-house, and the order given by the contractor to the bank, and his acceptance thereof? If so, would there, from any cause, ensue a defect of legal justice from a failure or improper fulfillment of this official duty? If so, did the applicant for the writ of mandamus have such an interest in the subject-matter as to authorize it to institute the proceeding? And finally, was there any other specific legal remedy? First we will consider the questions in relation to the contract between the ordinary on behalf of the county and the contractor, and afterwards we will refer separately to the question of entry on the minutes of the order given by the contractor to the bank and its acceptance by the ordinary.

1-3. Section 343 of the Political Code reads as follows: "All

contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered on their minutes." On whose minutes? Those of the ordinary. Whose duty is it to keep those minutes and to make the proper entries upon them? Evidently that of the ordinary, or perhaps his clerk if he has one. In this instance he has none, and therefore any possible question as to the duty of the ordinary himself, where there is a clerk, does not arise. If it was the duty of the ordinary to have entered on the minutes the contract when it was made, when did it cease to be his duty to do so? Certainly the continued neglect on the part of an officer to discharge an official duty resting upon him does not cause the duty to terminate. If it was the duty of the ordinary to have entered the written contract for the building of the court-house upon his minutes on the day when it was made, it was no less his duty to have entered it on the next day, or on the day after that, or on each subsequent day. If the duty once arose, there is no law which made it cease to be a duty until it was complied with. There is no controversy that the respondent in this case, as ordinary, had upon him the official duty of entering the contract for the building of the court-house upon the minutes; neither is there any controversy that he has not discharged that duty. It has been held that mandamus will lie to compel an entry on official minutes of a contract, judgment, or other proceeding, where it is the duty of an officer to record it and he fails to do so; and also to compel the adding of seals to contracts, or approving them, where it is not discretionary, or doing other similar ministerial acts to perfect them. *Milburn* v. *Commissioners of Glynn County*, 112 *Ga.* 160 (37 S. E. 178); Independent Dist. of Eden, etc., v. Rhodes, 88 Iowa, 570 (55 N. W. 524); Hall v. Crossman, 1 Vt. 297; Smith v. Moore, 38 Conn. 105; Prescott v. Gonser, 34 Iowa, 175; People v. Connolly, 2 Abb. Pr. (N. S.) 315; People v. Contracting Board, 46 Barb. (N. Y.) 254; Merrill on Mandamus, §124.

Had the applicant such an interest as authorized it to institute the proceeding? The bank furnished money to the contractor for the purpose of carrying out the contract. It has received from him an order for the delivery to it of the warrants for the unpaid amount which may be due. According to the allegations of the petition, it will be the real beneficiary of whatever may be paid on

the contract, or recovered in a suit upon it. Whether such a suit could be instituted in the name of the bank, or in the name of the contractor for its use, is not now in question. The amount due to the bank will cover the entire remaining payment which is to be made, if anything is due. The contractor really has no further interest in the proceeds which may be derived from the contract or its enforcement, according to the allegations made by the bank. It is the party really interested in determining the question of what, if any, balance remains due. This can not be done, nor can questions arising on the building contract be adjudicated with the contract unrecorded. The bank therefore had such an interest as authorized it to proceed to have the contract entered on the minutes. In *Savannah & Ogeechee Canal Co.* v. *Shuman,* 91 *Ga.* 400 (17 S. E. 937, 44 Am. St. R. 43), an application for mandamus against a chartered canal company, to compel it to keep its canal in a navigable condition, was made by a person who was engaged in the lumber business, who for several years had used the canal for transporting timber and other things, and who alleged that, because of its unnavigable condition, he was compelled to ship his timber by a more circuitous and expensive route. In the opinion of the court it was said: "It is clear, therefore, that he is specially interested in the navigation for which this canal was chartered, and that by a failure of the company to keep the canal navigable he sustains a special damage in which the general public does not share." In *Coffee* v. *Ragsdale,* 112 *Ga.* 705 (37 S. E. 968), where the sheriff of a county selected a newspaper in which to publish his legal advertisements, and the ordinary declined to publish his advertisements in the same paper, the proprietor thereof was held to have such a special interest as to authorize him to apply for a mandamus to compel the latter official to make the publication in his paper. In *Southern Ry. Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207 (57 S. E. 429), a shipper over a railroad was held to have such a special interest in the observance by the carrier of rates promulgated by the State railroad commission as to furnish a basis for compelling the railroad company to observe them as to shipments tendered by it. In *Dennington* v. *Mayor and Council of Roberta,* 130 *Ga.* 494 (61 S. E. 20), a teacher who had been employed in a public school was held to have such a special interest that he might require the municipal au

thorities to levy and collect a tax for the payment of his salary. In *Manson* v. *City of College Park,* ante, 429 (62 S. E. 278), where an election had been held under the act of ·August 7, 1906 (Acts 1906, p. 121), to provide for the change of county lines lying within the limits of incorporated towns and cities, and the ordinary of one of the counties failed and refused to join in completing the readjustment and change of the county lines, an application for mandamus, in which the municipality and some of its citizens and taxpayers joined, was granted, and it was held that the citizens and taxpayers had such an interest as authorized them to proceed. This is not the enforcement of an equitable right by mandamus, but the enforcement of compliance by an officer with his legal duty, at the instance of one having a special interest.

It has been suggested that the object of the law in requiring an entry of such contracts on the minutes is to give information easily accessible to the public as to the character of contracts being made by the county authorities. If it be a right on the part of the citizens to have the ordinary record contracts made by him for public information, possibly any citizen, or at least any taxpayer, might enforce that duty.

It is patent that there is no other legal remedy, if the ordinary should have recorded the contract, but failed to do so, and refused to make the record upon demand.

It is contended, that, under the statutory requirement that the contract made· by the ordinary on behalf of the county should be in writing and entered on the minutes, a failure to so record it rendered it absolutely void; and that therefore its recording at a subsequent time should not be compelled by mandamus, on the ground that the writ will not be granted when, for any cause, it would be nugatory or fruitless. The point in controversy here is whether the contract shall now be entered on the minutes. It is not necessary to decide what effect such entry will have, or as to whether the contract would then be valid or enforceable. In *Milburn* v. *Commissioners of Glynn County,* 109 *Ga.* 473 (34 S. E. 848), 112 *Ga.* 160 (37 S. E. 178), a suit was brought on a contract against a county, and a demurrer was sustained on the ground that it was not alleged that the contract was entered on the minutes of the proper authorities in charge of the financial

affairs of such county (in that instance county commissioners instead of an ordinary). After that an application was made to require the commissioners to have the contract entered on the minutes. The trial court refused the mandamus absolute, and his judgment was reversed. It was stated in the opinion (112 Ga.), that the commissioners in their answer alleged that the question was res adjudicata, inasmuch as the applicant had already brought suit against them on the contract, and the court had decided that he had no cause of action; that it was therefore unnecessary to comply with his request and place the contract on the minutes; and that such entry could not avail him anything. In regard to this contention that the writ would be nugatory, Chief Justice Simmons said (p. 162) : "Whether Milburn can, after the amendment of the minutes, bring another action upon the contract, is not now decided. What we do decide is that Milburn is interested in having the minutes corrected, and is entitled to a mandamus absolute, requiring the commissioners to make their minutes conform to the truth."

We might rest the case upon that decision, but as it was concurred in by five Justices, and therefore does not fall within the statutory provision making a decision by the entire bench binding until formally reviewed and modified or overruled, it has been deemed best to consider the case in addition to the mere citation of that authority. We are of the opinion that the ruling there made is sound. The respondent here sets up, as reasons against the grant of the writ, certain matters affecting the merits of the controversy, as if suit had been brought on the contract. But without regard to whether such contentions would have any force in such a suit, the plaintiff is prevented from reaching that stage of his case at all, because the contract is not recorded. See People v. Contracting Board, 46 Barb. (N. Y.) 254. Counsel for defendant in error have in their brief thus strongly presented their contention on this subject: "The fact that this contract is not entered upon the minutes is not a defense that goes to the real issue as to whether or not the contract has been complied with, and Forsyth County actually owes this money, but is one that simply cuts off all inquiry upon the question and closes the doors of the court against the ascertainment of the truth."

All the Justices concur in holding that the mandamus absolute

was properly granted as to this contract, without deciding what effect such entry would have, or what defenses might be made to the contract, if suit were brought upon it. Speaking for myself (and in these views some of the Justices . concur), I am not prepared to say that this court has ever distinctly ruled that a failure on the part of an ordinary, or of county commissioners, to record on the minutes, within any particular time, a contract made for the county rendered the contract absolutely void, so that it could not be aided if the officer was subsequently compelled by mandamus to perform the ministerial duty of recording, which he ought to have performed at the proper time. In *Justices* v. *House,* 20 *Ga.* 328, which was decided before the adoption of the Code, it was held that the law which required the judges of the superior and inferior courts to sign the minutes was only directory, and that an omission on the part of an officer to perform a duty of this character would not invalidate the minutes unless the law so declared. In *Commissioners* v. *Shorter,* 50 *Ga.* 489, McCay, J., said (p. 508) : "We recognize the propriety of publicity in acts by public officers of this character, and without question it would have been more formal and regular for . the court to have passed an order and put it on the minutes, declaring the amount of the subscription, the date, numbers, and denominations of the bonds, etc. But this order was not any part of the power of the court to issue the bonds. The power and authority came from the legislature and the people. The order would have been only a more complete and regular mode of doing it. In the case of *House* vs. *The Justices,* 20 *Georgia,* 328, this court held, in effect, that the inferior court might make a parol contract, and that it is not a necessity that its action in such a matter should appear on the minutes. In other words, the contract of the county, if signed by the justices, was not invalid because not mentioned on the minutes." Under the law as it now stands, the contract must be in writing and the proper officer must enter it on the minutes; but the decision last cited recognized the distinction between a directory provision to the officer and a mandatory provision or a conferring of power upon the officer. The very statement in the statute that the contract "must be in writing and entered on their minutes" seems to imply the possibility of having a contract in writing complete before it is entered on the minutes.

The recording of a written contract by an officer would not appear to be necessarily a part of his power to make the contract. Whatever may be the ruling when the point is squarely presented, I do not think that this court has yet decided that the failure of an ordinary to do his duty in recording a contract promptly, however wrong it may be, renders such contract an absolute nullity. It has been held several times (and it is perhaps now too firmly settled to be reviewed) that in a suit on the contract the petition must allege that such contract has been entered on the minutes, or it will be subject to demurrer; and the expression has been used that a contract not so entered was "invalid;" but that word is not always used in the sense of describing an absolute nullity. A contract may be so imperfect as to be not enforceable, and yet not so absolute a nullity that it can not be perfected. That in a suit on a contract against a county the petition must show that the contract has been entered on the minutes was the exact point ruled in *Pritchett* v. *Inferior Court,* 46 *Ga.* 462, which was the parent case on this subject. In *Akin* v. *Ordinary of Bartow County,* 54 *Ga.* 59, 69, the ruling made was that "The charge of the court, that the contract should be in writing and entered on the minutes of the court, was good law if it had been applicable to the facts proved by the evidence in the case before it." The *Pritchett* case was referred to approvingly. In *Milburn* v. *Glynn County,* 109 *Ga.* 473, supra, it was held that, under the decision in the *Pritchett* case, in a suit against a county on a contract it must be alleged that the contract had been entered on the minutes. Mr. Justice Lewis, in delivering the opinion, discussed at some length the difference between essential parts of a contract and a failure of an officer to comply with directory provisions of the law (pp. 475, 476). He expressed dissatisfaction, as an original proposition, with the ruling in the *Pritchett* case, but said that it was binding. In the course of his opinion he made use of the expression that he would not be prepared, as an original proposition, to say that such an omission of duty upon the part of county authorities would operate to render the contract "absolutely void;" but it was not directly adjudicated to be so. In *Holliday* v. *Jackson County,* 121 *Ga.* 310 (48 S. E. 947), a nonsuit was granted on the ground that the plaintiff did not show that he had a written contract with the county, as appears by the official report. It

does not appear that the question of entry on the minutes was involved, although it is mentioned in the headnote. In *Spalding County* v. *Chamberlin & Co.,* 130 *Ga.* 649 (61 S. E. 533), the suit was on a contract, and reliance was had upon an order of the board of commissioners entered on the minutes, as constituting such contract. It did not contain certain terms · of the alleged agreement, and no other complete written contract was alleged. It was held, that if the order or resolution should be treated as constituting a contract, it did not contain all of the substantial terms, and was therefore not a complete contract in writing. In *Jones* v. *Bank of Cumming,* ante, 191 (62 S. E. 68), the necessity for an allegation that a contract with the county was in writing and entered on the minutes was repeated, this time in a case arising on an application for mandamus to compel the ordinary to issue a warrant for payment under such contract. In the opinion reference was made to the *Pritchett* case as ruling that such a contract was "not valid." The statement that the object of the law requiring the entry of such contracts on the minutes is to give information easily accessible to the public, as to the character of contracts being made by the county authorities, is equally true, whether the provision as to entering on the minutes be treated as mandatory or directory. If the failure of the ordinary to enter the formal written contract upon the minutes promptly rendered it wholly void, when did it become so? What would have been the effect if he had recorded it on the day after it was made, or some day soon thereafter? At what point did the failure of the ordinary to perform his duty, as the public may presume he will do, render his written contract an absolute nullity? If the contract was "invalid" until recorded, only in the sense that it was not perfected or completed in matter of formal entry, so as to form a basis for a suit, could the county get the courthouse and use it, and, when called on to pay, respond that its official made the contract in writing but failed to record it, and that if it should now be recorded it would still be a nullity? It was suggested that the contract might have been recorded at any time before the contractor began work, but if not then recorded, it became a nullity. The statute makes no such declaration, and prescribes no time within which the written contract remains inchoate and at the end of which it becomes null because not entered.

4, 5. In regard to the placing on the minutes of the order given by the contractor to the bank, requesting the ordinary to deliver to the latter the warrant for the last payment under the building contract, and the acceptance thereof by the ordinary, the case is different. The Political Code prescribes, in section 344 et seq., the mode of letting out the contract for building a county court-house. It contemplates a contract between the officer having charge of the roads and revenues and public buildings of the county (here the ordinary) and the contractor. We know of no authority on the part of the ordinary to accept orders given by the contractor on him or the county, and to bind the latter thereby. There is nothing in the building contract as to issuing warrants or making payments to persons to whom the contractor might give orders subject to the terms of the contract, even if that would have made any difference. It may be that if the contractor empowers some person to receive the warrants for him, a delivery to such person would be a good delivery as against the contractor. But this is different from binding a county by acceptances of orders of the contractor in favor of others. Such a practice might create great confusion and embroil the county in litigation with various persons holding its acceptances. It was the contract to build the court-house which the ordinary was authorized to make, not acceptances of orders on him. There being in law no contract of acceptance binding on the county, the acceptance of the ordinary will not be required to be put upon record.

When the case between these parties was formerly before the court (*Jones* v. *Bank of Cumming,* already referred to) there was a petition for mandamus to compel the ordinary to issue the warrant in favor of the contractor and deliver it to the bank. A demurrer was interposed which raised the point, among others, that it was not alleged that either the building contract or the order and acceptance were entered on the minutes. The demurrer was overruled, and the respondent excepted. Under former decisions the failure to allege the entry of the building contract rendered the petition demurrable. In the opinion no distinction was mentioned between the building contract authorized by law and the acceptance of the ordinary, which was not authorized by law. In the headnote and the opinion it was said that the petition "was subject to the ground of a demurrer that set up that

40

it did not appear from the petition that either the contract between the ordinary and the contractor, or the written order given by the latter to the petitioner on the ordinary for the warrants, and accepted in writing by the ordinary, was entered on the minutes of the ordinary." This was, in substance, really a recital of the ground of the demurrer then filed. In the present case the point is distinctly raised that the acceptance was without authority of law, and not binding upon the county, and that the contract entered into by express authority and direction of law for the building of a court-house, after all the requirements of law had been complied with, could not be modified or changed arbitrarily or in this summary way by the executive agent of the county. As this involves the question of requiring the acceptance to be entered on the minutes as distinct from that of directing the entry of the building contract, it is necessary now to distinguish between the status of the two. No doubt the language of the court in the former case, where this distinction was not discussed, may have led the presiding judge to deal with the two papers together as standing on the same basis; but now that the distinction becomes material, we must treat them differently.

In *State* v. *Southwestern Railroad, 66 Ga.* 403, the want of authority on the part of the attorney-general to make a compromise was considered as one ground for reopening a written settlement made by him, and not allowing it to be entered as the judgment of the court. See also Political Code, § 268; *Penitentiary Co.* v. *Gordan, 85 Ga.* 159, 171 (11 S. E. 854); *Town of Wadley* v. *Lancaster,* 124 *Ga.* 354 (52 S. E. 335); Mechem on Public Officers, § 924; Day Land and Cattle Co. *v.* State, 68 Texas, 526 (22), (4 S. W. 865).

The judgment making the mandamus absolute is affirmed as to the building contract; but with direction that it be modified so as not to include the order given by the contractor to the ordinary and his acceptance thereof.

*Judgment affirmed, with direction. All the Justices concur.*