RUGG, Admrx., Plaintiff, v. OFFICE OF PRICE ADMINIS-
TRATION et, Defendants.

Probate Court, Franklin County.

No. 109432. Decided October 24, 1944.

458

Rodney B. Baldwin, Columbus, for administratrix.

J. Maxwell Maher, Columbus, district attorney, for Office of Price Administration.

## OPINION

## DECISION ON APPLICATION FOR DECLARATORY JUDGMENT

By McCLELLAND, J.

This matter comes before the Court upon a petition and an amendment thereto for a declaratory judgment filed by Donna M. Rugg, as Administratrix of the Estate of Robert D. Rugg, deceased, and as an individual, against the Office of Price Administration of the United States of America, Chester Bowles, Price Administrator of the Office of Price Administration, and John H. Summers, District Director of the Office of Price Admistration, Columbus, Ohio, in which action the plaintiff is asking for a declaratory judgment with reference to the legal effect of certain facts set forth in the petition and the amendment thereto. An answer was filed by John H. Summers, District Director, in which answer he alleges that this Court has no jurisdiction to grant the relief prayed for. At the hearing of this matter all of the allegations of fact contained in the petition and the amendment thereto were agreed to as a statement of facts by the defendant, John H. Summers.

The record in this case discloses that on February 11, 1944, Donna M. Rugg was appointed Administratrix of the estate of Robert D. Rugg, deceased, her husband. A short time thereafter the Administratrx found that the personal property in the estate was insufficient to pay the debts of the estate

and then proceeded under the law of Ohio to sell the personal property of the deceased at public sale. All of the personal property as appearing in the sale bill was offered for sale. Among that property were certain farm implements which, it is claimed by the defendant, are subject to the price ceilings as established by the Office of Price Administration. This particular property consisted of one 1940 General tractor, one Avery corn planter, one tractor cultivator, and one 2 bottom 12 in. John Deere tractor plow. In this particular matter we are only concerned with the above named personal property, the sale price of which it is claimed is governed by the office of Price Administration. The property was offered at public sale and a large number of prospective bidders bid the ceiling price as established by the above named office. The auctioneer refused to receive any bids in excess of the price as fixed. He then proceeded to choose the successful bidder by lot. A few days thereafter the Administratrix, through her attorney, made a return of the sale to this Court and the Court refused to confirm the sale as to the above named farm implements for the reason that the Administratrix did not comply with the law of Ohio in making such sale.

**Section 10509-90 GC is as follows:**

"At any time after the appointment of an executor or administrator, the probate court, when satisfied that it would be for the best interests of the estate, may authorize such executor or administrator to sell, at public sale, or at private sale, at a fixed price or for the best price obtainable, and for cash or on such terms as the court may determine, any part or all of the personal property belonging to the estate, except: * * * * *"

**Section 10509-91 GC is as follows:**

"Public sales of personal property shall be at public auction, and, unless otherwise directed by the probate court, after notice of such sale has been given: * * * * *"

A short time thereafter, on March 2, 1944, after this Court refused to confirm said sale, it made the following order:

"This day this cause came on to be heard upon the Report of a sale of a 1940 General tractor, an Avery corn planter

attachment, a cultivator attachment and a 2 bottom 12 in. John Deere tractor plow, and the Court after due and careful consideration, finds that said sale was not made in conformity to law and that the same should not be confirmed.

It is, therefore, ordered, adjudged and decreed that the sale of the property above described be, and the same hereby is set aside and held for naught and the administratrix, Donna H. Rugg, is hereby ordered to sell said tractor, corn planter, cultivator and tractor plow at public sale for the best price obtainable and for cash, after advertising the same at least three times in a newspaper of general circulation in the county during a period of 15 days next preceding the sale, notwithstanding the fact that the best price obtainable may be greater than the ceiling price as fixed by the Office of Price Administration of the United States of America."

Prior to the sale above mentioned and at the sale the Administratrix was ordered by the Office of Price Administration to refrain from selling any of the above described property at a price higher than the ceiling price as fixed by the Office of Price Administration. That order has not been rescinded. The order of this Court as hereinbefore set forth in full raises a direct conflict between the authority of this Court and the authority of the Office of Price Administration. The Administratrix being in doubt as to her rights and her duty in the premises, then filed in this Court the proceeding for declaratory judgment, in which she asks that this court find and declare that the sale ordered by this Court on March 2, 1944, does not come within the purview of the Price Control Act, that selling prices set by the Office of Price Administration do not apply to judicial sales, and further, to instruct her to proceed with the sale of the tractor and farm equipment at public sale for the highest price obtainable.

Subsequent to the date of filing her application for declaratory judgment in this Court, Chester Bowles, Price Administrator of the Office of Price Administration, filed an action in the District Court of the United States for the Southern District of Ohio, Eastern Division, against Donna M. Rugg, individually and as Administratrix of the estate of Robert D. Rugg, deceased, in which action the essential facts as hereinbefore set forth were alleged, and in which action the plaintiff prayed for:

"1. A preliminary and final injunction enjoining the defendant, her agents, servants, employees, attorneys and all persons in active concert or participating with the defendant from:

a. Directly or indirectly, delivering or negotiating the sale of said farm equipment at a price higher than the Maximum Price Regulation No. 133 as amended.

b. Directly or indirectly agreeing, offering, soliciting or attempting to sell, deliver or negotiate the sale of such farm equipment at a price higher than the maximum price fixed by Maximum Price Regulation No. 133 as amended.

c. Maintaining, prosecuting or continuing the action which she has instituted in the Probate Court of Franklin County, Ohio, under the style 'Donna M. Rugg as administratrix of the Estate of Robert D. Rugg and as an individual against the Office of Price Administration of the United States of America,' insofar as she attempts thereby to secure an order in said Probate Court directing and ordering her as such administratrix to sell such farm equipment at a price which would be in violation of Maximum Price Regulation No. 133 as amended.

d. Permitting or continuing any acts, practices or omissions in violation of any Regulation, schedule requirement or order relating to such farm equipment which has now or may hereafter be issued by the Price Administrator pursuant to the Act."

The matter was submitted to the District Court on a statement of facts and upon briefs. **The District Court upon consideration of same refused the prayer of the petition.**

In the proceeding at bar this Court is not attempting to pass upon the constitutionality of the Act. The constitutionality of the Emergency Price Control Act has been upheld by the Supreme Court of the United States in the case of Yakus v United States, 88 Lawyers Edition, page 573 (Adv. Op. No. 11). Although there were dissenting opinions containing very cogent arguments against the validity of the Act, the majority of the Supreme Court have settled: "(a) that in the enactment of that law there has been no unlawful delegation of powers; (b) the conferring on the Emergency Court of Appeals and the United States Supreme Court of exclusive jursdiction to determine the validity of any regulation or order of the administrator, and denying any other

462

court jurisdiction to consider the validity of a price regulation, precludes any other court from considering the validity of the order, if the administrator was vested with power to make the order; (c) that there is no deprivation of property without due process of law as guaranteed by the Constitution, if the law in this particular instance gave the defendant the opportunity of protesting to the administrator and appealing to a court."

We will first briefly consider whether this Court has the jurisdiction in the premises to make the ruling requested. The United States District Court, as we have hereinbefore stated, refused to grant the restraining order chiefly for the reason that there was no threat or attempt at the time indicated on the part of the defendant to violate any rules or orders of the Price Administrator. The district Judge in his opinion uses the following significant language:

"Possibly it is unnecessary to consider the case further, but this Court cannot refrain from pointing out that the ultimate result of granting the injunction herein sought, would be for this Court to substitute its judgment in an injunctive proceeding, for that of the Probate Court of Franklin County in an action for a declaratory judgment. No authority has been cited which would indicate that a United States District Court should seek to prevent by its injunctive powers, a probate court from instructing its own officers as to the application of a federal law to a matter before that court. The provisions of the Constitution of the United States and the laws of the United States are just as binding upon the state courts as upon federal courts. The principle is clearly stated by the Supreme Court of the United States in Claflin v Houseman, Assignee, 93 U. S. 131, 137:

' * * * The fact that a State Court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and it is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.'

It follows, therefore, that the Probate Court of Franklin County is bound by exactly the same law as that which binds this Court. If that Court should err in its application of federal law, to the facts of the case before it, ample provision has been made to review its decision and correct the error in much the same manner as a similar error committed by this Court would be corrected.

Admittedly, the injunction herein prayed for is sought against Mrs. Rugg, but the ultimate effect of the issuance of such an injunction, is to withdraw from the State Court, the right to pass upon a question of law properly raised in a proceeding before it, simply because the statute involved is a federal statute. It is true that the law involved is an emergency statute differing in some particulars from other statutes, but it is not in a field such as bankruptcy, wherein the federal courts have paramount and exclusive jurisdiction. The Emergency Price Control Act of 1942, specifically provides, (Sec. 205 of the Act; Sec. 925 (c), Title 50 App. U. S. C. A.). "The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act (Sec. 904, Title 50 App. U. S. C. A.) and concurrently with the State and Territorial courts of all other proceedings under secton 205 of this Act (Sec. 925, Title 50 App. U. S. C. A.) The injunctive proceeding in this Court is based upon Sec. 925 (a) of Title 50 App. U. S. C. A.

Questions of law are not to be haphazardly withdrawn from state courts by federal courts, even where the most sacred of the constitutional freedoms are concerned. In the case of Douglas v Jeanette, 319 U. S. 157, the fourth and fifth syllabi read as follows:

'4. Though a federal court have power as such to decide the cause, it should raise sua sponte the question of want of equity jurisdiction where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.

'5. It is the policy of Congress to leave to the state courts trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved, and the federal courts should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and iminent; and equitable remedies infringing this independence of the States—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds.'

Although the Douglas case is a criminal case, it has been equally well establshed that probate matters have been as fully and completely left within the jurisdiction of the state courts as criminal matters involving state offenses, and there appears to be no logical reason to find anything more sacred involved in the instant case than the basic constitutional right involved in the Douglas case. It follows that the federal question here involved should likewise be left to the state court for determination subject to later review if required by the circumstances."

The Court of Appeals of Stark County, Ohio, in a decision rendered on October 6, 1943, in the case of **Hurst v Haak, 73 Oh Ap 189,** in passing upon a rent regulation growing out of the Emergency Price Control Act, used the following language:

"If, on the other hand, the regulations go beyond the purpose of the act and the powers thereby delegated, and thereby arbitrarily abrogate and temporarily nullify provi- sional remedies created by state statutes, then, the question presented is neither one of interpretation of the regulations nor a questioning of their propriety; but the inquiry goes to the power of the administrator to make any regulation covering a subject which is not within the scope and purpose of the act under which they purport to be promulgated. Such a subject is always one for judicial inquiry in any court wherein constitutional rights are sought to be enforced. If this were not true, then one who has been delegated certain powers may assume to exercise others than were never embraced within the grant or intended to be exercised."

The foregoing statement of Judge Sherick is based upon a clear and concise conception of the constitutional limitations of each branch of the government upon the other.

This case was decided on October 6, 1943, prior to the decision of the Supreme Court in the Yakus case above referred to. The Supreme Court in the Yakus case, however, at page 659, has stated briefly the same principle, as follows:

"The boundaries of the field of the Administrator's permissible action are marked by the statute."

The Judge of the United States District Court for the Western District of Missouri has recently held that the val-

idity of a regulation made by the Administrator of the Price Control Act may be challenged by the defendant when the Administrator seeks to enjoin an alleged violation of said Act. The third syllabus reads as follows:

"In action by Price Administrator to enjoin violation of or enforce compliance with regulations, defendant may challenge validity of the regulations as being outside scope of administrator's statutory authority, Administrator's construction of regulations as meaning something beyond their manifest terms, and Administrator's construction of Emergency Price Control Act under which such regulations were promulgated."

Bowles, Price Administrator, v Bonnie Bee Shop, et al. Federal Supplement August 28, 1944, page 754.

It therefore follows that any orders of the Price Administrator which are not within the field of the Administrator's authority as set by the Emergency Price Control Act are void and of no effect, and that this Court has the jurisdiction to consider and determine, subject, of course, to review, whether the order complained of is one by which the fiduciary appointed by this Court is bound.

Inasmuch as we have determined that this Court has jurisdiction to consider the matter, we have two phases of the situation to consider. First, has the Administrator the authority under the Act to issue an order overriding the order of a constitutional court of the State of Ohio, which order was made in pursuance of a mandatory state statute. If we conclude that the order was not authorized by the Act, it was therefore a void order.

Second, if the Act and the regulations issued thereunder do not provide for a timely adjudication of the rights of the persons subject to the order, the order is invalid because it denies to the defendant the benefit of "due process of law" as provided by the Constitution of the United States.

Let us first examine the purpose clause of the Price Control Act:

## "APPENDIX A
### PERTINENT PROVISIONS OF THE EMERGENCY PRICE CONTROL ACT OF 1942.

SECTION 1 (a) It is hereby declared to be in the interest of the national defense and security and necessary to the

effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values; to stabilize agricultural prices in the manner provided in section 3; and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes. It shall be the policy of those departments and agencies of the Government dealing with wages (including the Department of Labor and its various bureaus, the War Department, the Navy Department, the War Production Board, the National Labor Relations Board, the National Mediation Board, the National War Labor Board, and others heretofore or hereafter created), within the limits of their authority and jurisdiction, to work toward a stabilization of prices, fair and equitable wages, and cost of production."

Section 2 (a) of the Act prescribes standards governing the Price Administrator's power to fix prices, the pertinent portions of which are in the following language:

SECTION 2 (a) Whenever in the judgment of the Price Administrator (provided for in section 201) the price or prices of a commodity or commodities have arisen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. So far as practicable, in establishing any maximum price, the Administrator shall ascertain and give

due consideration to the prices prevailing between October 1 and October 14, 1941 (or if, in the case of any commodity, there are no prevailing prices between such dates, or the prevailing prices between such dates are not generally representative because of abnormal or seasonal market conditions or other cause, then to the prices prevailing during the nearest two-week period in which, in the judgment of the administrator, the prices for such commodity are generally representative), for the commodity or commodities included under such regulation or order, and shall make adjustments for such relevant factors as he may determine and deem to be of general applicability, including the following: Speculative fluctuations, general increases or decreases in costs of production, distribution, and transportation, and general increases or decreases in profits earned by sellers of the commodity or commodities, during and subsequent to the year ended October 1, 1941. Every regulation or order issued under the foregoing provisions of this subsection shall be accompanied by a statement of the considerations involved in the issuance of such regulation or order. As used in the foregoing provisions of this subsection, the term "regulation or order" means a regulation or order of general applicability and effect. Before issuing any regulation or order under the foregoing provisions of this subsection, the administrator shall, so far as practicable, advise and consult with representative members of the industry which will be affected by such regulation or order. In the case of any commodity for which a maximum price has been established, the Administrator shall, at the request of any substantial portion of the industry subject to such maximum price regulation, or order of the Administrator, appoint an industry advisory committee, or committees, either national or regional or both, consisting of such number of representatives of the industry as may be necessary in order to constitute a committee truly representative of the industry, or of the industry in such region, as the case may be. The committee shall select a chairman from among its members, and shall meet at the call of the chairman. The Administrator shall from time to time, at the request of the committee, advise and consult with the committee with respect to the regulation or order, and with respect to the form thereof, and classifications, differentiations, and adjustments therein. The committee may make such recommendations to the Administrator as it deems advisable.

Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he may, without regard to the foregoing provisions of this subsection, issue temporary regulations or orders establishing as a maximum price or maximum prices the price or prices prevailing with respect to any commodity or commodities within five days prior to the date of issuance of such temporary regulations or orders; but any such temporary regulation or order shall be effective for not more than sixty days, and may be replaced by a regulation or order issued under the foregoing provisions of this subsection.

(c) Any regulation or order under this section may be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act. Any regulation or order under this section which establishes a maximum price or maximum rent may provide for a maximum price or maximum rent below the price or prices prevailing for the commodity or commodities, or below the rent or rents prevailing for the defense-area housing accommodations, at the time of the issuance of such regulation or order.

SECTION 4 (a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under Section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202 (b) or section 205 (f), or to offer, solicit, attempt, or agree to do any of the foregoing.

SECTION 201 (d) The Administrator may, from time to time, issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act."

In pursuance of the authority vested in the Administrator, he, on July 15, 1942, issued Supplementary Order No. 10, with which order he states his reasons for issuing same. This

order exempts certain property under judicial sale from the operation of the Price Control Act. On examination of the reasons therein given, this Court is convinced that the Administrator had some doubt in his own mind as to its applicability to judicial sales.

Reading again section 2, which prescribes the standards governing the Administrator's power to fix prices, we find that the Administrator so far as practicable, shall advise and consult with representative members of the industry which will be affected. It also provides that after a maximum price has been established the Administrator shall at the request of any substantial portion of the industry appoint an industry advisory committee which shall perform certain duties therein named. Is any court an industry? The question answers itself. Are fiduciaries, acting under the order of a court, conducting an industry? The statute of Ohio does provide that the personal representative of a decedent may conduct his business for a certain length of time under the order of the court. If the decedent was engaged in an industry as an individual, it is probable that the operation of that industry under the order of the court would be subject to the Price Control Act.

But the probate court has no authority to conduct an industry as such. A probate court cannot authorize a corporation to continue business. It has no jurisdiction in that respect. The probate court cannot authorize a partnership to operate or continue a business or industry. The probate court's authority is limited to the administration of the estate of deceased individuals and those only. Is the administration of the estates of individuals an industry? We say emphatically no.

The Administrator is also required to inquire as to the prevailing prices in an industry. Are there any prevailing prices in the sales of personal property by administrators or executors in the State of Ohio, or in any other state?

At this point let us take notice of the fact that a judicial sale is always a forced sale. It is never a sale conducted by a free vendor and a free purchaser. When an administrtrator or executor sells at judicial sale the public always knows that the fiduciary is forced to sell and is compelled to take whatever is offered providing it is within the statutory amount. The conduct of an industry implies the existence of a free vendor and a free purchaser.

We must also take note of another fact regarding sales by an administrator or executor. These are not sales as contemplated by the term business. They are isolated sales, to say the least. A person dies a natural death but once. His estate is administered only once. His estate may be sold only once. Therefore sales conducted by the various administrators are not those of continuous and repeated transactions of the same character. How than can we ever conceive it to be the intent of the Congress of the United States in enacting the purpose clause to give to the Administrator authority over judicial sales by the personal representative of a deceased person?

Upon an examination of the provisions relative to procedure under this Act, we find that any person may file a protest within a period of sixty days after the effective date of the issuance of the order. The same statute also provides that after the first sixty days have expired a protest may be filed solely on grounds arising after the expiration of the first sixty days period.

In the case at bar the administrator was appointed long after the expiration of sixty days after the issuance of the order complained of. Nor have any new grounds arisen which would give her a right to protest. Without the right to protest there is no right to complain to the Emergency Court of Appeals. Certainly it was not within the contemplation of Congress to make this Act operative as to any person so situated.

Again it is provided in the enforcement section that whenever in the judgment of the Administrator any person engages in acts violative of section 4 of the Act which includes selling or delivering a commodity or in the course of business or trade to buy or receive a commodity in violation of a regulation or order, he may apply for an injunction, etc.

Why refer to the buyer or receiver as one engaging in a trade or business if it were not intended to be reciprocal on the seller? In any event the court who orders a judicial sale is not included in the Act. The administrator appointed by the probate court is bound by the state law. A judicial sale is made under the direction of the court by an officer commissioned to sell in such a case, but the court is the vendor, while the officer appointed to sell is a ministerial agent. This statement is supported by Pewabie Min. Co. v Mason, 145 U. S. 345, **24 O. Jur., p. 9.**

The court therefore is not a person and certainly cannot be considered a "person" as used in the Act.

It is therefore our opinion that judicial sales made under the order of a judge of a constitutional court are beyond the purview of the Act and that any order of the Price Administrator attempting to regulate such sales is null and void.

The next question which we will consider briefly is whether the order of the Administrator is void because it denies this fiduciary due process of law as guaranteed by the Constitution of the United States. It will be noted that anyone affected by the order may file a protest within sixty days after the issuance of the order, and further that a protest may be filed after the sixty days period solely on grounds arising after the sixty days period. No one can determine in advance when an administrator is to be appointed. One can be appointed only after the owner of the estate has died. Administrators are being appointed by the courts every day for the estates of deceased persons, and long after the expiration of the sixty days period. How can these administrators file any protest within sixty days after the issuance of the order? What grounds have these administrators arising after the expiration of the first sixty days period which would give them a right to protest. An appeal can be made to the Emergency Court of Appeals only after a protest has been made. Therefore these persons have no right to appeal to the Emergency Court of Appeals. Therefore they are denied due process of law as guaranteed by the Federal Constitution.

Let us consider further the Yakus case above referred to as applying to the situation now before the Court. The Supreme Court in that case uses the following language:

"Nor do we consider whether one who is forced to trial and convicted of violation of a regulation, while diligently seeking determination of its validity by the statutory procedure may thus be deprived of the defense that the regulation is invalid. There is no contention that the present regulation is void on its face, petitioners have taken no step to challenge its validity by the procedure which was open to them and it does not appear that they have been deprived of the opportunity to do so."

We contend that the regulation as applied to the sale as ordered by this Court is void on its face because it is beyond the power of the Administrator and, hence, we may treat it as void. The Supreme Court in the Yakus case must have

distinguished between a void and an invalid regulation; otherwise, there would have been no reason for the language above quoted. Moreover, the word "validity" as used in "(d)", page 3 of the Appendix giving the Emergency Court of Appeals exclusive jurisdiction to determine the validity of any regulation or order, and excluding jurisdiction or power of other courts to consider the validity of any such regulation must be read in the light of Section 203, page 4 et. seq. of the Appendix. The protest and review calls for evidence, that is, economic data and other facts; "evidence" in support of objections must appear in the transcript; "additional evidence" may be introduced on leave of the court; the protest is to be accompanied by affidavits or other written evidence; "statements" supporting the order or regulation may be received.

All this plainly shows that the determination of validity by the Emergency Court of Appeals is to be based on facts; not the question of law which we have here which presents purely a law question as to whether or not the order or regulation is void as not coming within the purview of the act.

It is probable that Mr. Justice Stone would not have used the language he did if he did not make the distinction between a void and an invalid order. He held that "validity" and "constitutionality" were exclusively to be decided by the Emergency Court and the Supreme Court. If a void order were an invalid order, the court would not have found it necessary to use the language quoted. This distinction was probably called forth by the position of Mr. Justice Rutledge in his dissent discussing Wadley v Georgia, 235 U. S. 651, and his statement in concurring in Bowles v Wellingham, 88 L. Ed. Adv. Ops. No. 11, pages 626, 638, as follows:

"In my opinion Congress can do this subject, however, to the following limitations or reservations, which I think should be stated explicitly:

(1) The order or regulation must not be invalid on its face."

See Jones v Bank, 131 Ga. 614.

In the case of City v Litchfield, 95 Ill. App.————, we find the following language used:

"A invalid order is made in the way it should not have been made; and an order is void when made without power."

See **Terrell v Alexander**, 14 Oh St, p 80.

**Bank v Fortner**, 46 Oh St, p 381.

In Manhattan G. E. Co. v Commissioner of Internal Revenue, 297 U. S. 130, the court uses the following language:

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulaion which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. And not only must a regulation in order to be valid, be consistent with the statute, but it must be reasonable."

In Utah Power & Light Co. v U. S., 243 U. S. 389, is found the following language:

"If any of the regulations go beyond what has been authorized, those regulations are void and may be disregarded."

We therefore must come to the conclusion that the regulation complained of is null and void for the reason that it is not within the purview of the Emergency Price Control Act.

Any court having before it the question as to the line of demarcation between the jurisdiction of the state and the jurisdiction of the federal government, must follow well established rules of construction, one of which is that a statute must be so construed as not to affect a state law unless it is clear by the holding of the statute that such is the purpose thereof.

Justice Jackson of the Supreme Court of the United States has well expressed this rule of interpretation in this language:

"In the light of such history, this court has been reluctant to construe the emergency legislation as giving the Administrator standing to make mandatory demands upon other tribunals or to strip them of their usual discretion. This statutory principle as we have said in the language of Mr. Justice Douglas, 'The Administrator does not carry the sole burden of the war against inflation.'"

Interstate Commerce Commission v Jersey City, 64 S. Ct. Rep. 1129, 1137 (Adv. Ops. of Decisions announced May 29, 1944).

In Florida v United States, 262 U. S. 194, Mr. Chief Justice Hughes says that the propriety of the assertion of the authority of the United States must be tested by the principle:

"Whenever the federal power is exerted within what would otherwise be the domain of the state power, the justification of the exercise of the federal power must clearly appear." (pp. 211-212)

In Yonkers v United States, 88 Adv. Ops. (Law Ed.) p. 241, decided January 3, 1944, the court dealt with the power of the Interstate Commerce Commission to control the abandonment of intrastate carriers. In that opinon, it is said:

"We recently stated that the extension of federal control into these traditional local domains is a 'delicate exercise of legislative policy in achieving a wise accommodation between the needs of central control and the lively maintenance of local institutions. * * * It has insisted on a 'suitable regard to the principle that whenever the federal power is exerted within what would otherwise be the domain of state power, the justification of the exercise of the federal power must clearly appear.' * * * Proper regard for the rightful concern of local interests in the management of local transportation facilities makes desirable the requirement that federal power be exercised only where the statutory authority affirmatively appears."

Vinson v Washington Gas Light Co., 88 Law. Ed., Adv. Ops. 11, p. 646.

Davies Warehouse Co. v Bowles, 88 Law. Ed., Adv. Ops. 7, p. 379:

"At a time when great measures of concentration of direction are concededly necessary, it may be thought more farsighted to avoid paralyzing or extinguishing local institutions which do not seriously conflict with the central government's place. Congress has given no indication that it would draw all such state authority into the vortex of the war power. Nor should we rush the trend to centralization where Congress has not. It could never be more appropriate than now to

heed the maxim reiterated recently by the Court that 'the extension of federal control into those traditional local domains is a delicate exercise of legislative policy in achieving a wise accommodation between the needs of central control and the lively maintenance of local institutions.' Yonkers v United States, No. 109, October term, 1943, decided January 3, 1944 (———U. S.———, ante 241, 64 S. Ct. 327); Palmer v Massachusetts, 308 U. S. 79, 84, 84 L. Ed. 93, 97. 60 S. Ct. 34, 41 Am. Banker Rep. (n. s.) 134. At least in the absence of a congressional mandate to that effect, we cannot adopt a rule of construction, otherwise unjustified, to relieve federal administrators of what we may well believe is a substantial burden but one implied by the terms of the legislation when viewed against the background of our form of government. ***." (p. 385)

"It is a much more serious thing to adopt a rule of construction, as we are asked to do here, which precludes the execution of state laws by state authority in a matter normally within state power. The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state." (p. 385)

In Reid v Colorado, 187 U. S. 137, Mr. Justice Harlan says on p. 148:

"This court has said—and the principle has often been reaffirmed—that in the application of this principle of supremacy of an act of Congress in a case where the state law is but the exercise of a reserve power, the repugnancy or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together;" citing

Sinnott v Davenport, 22 How. 227, 243.

"Therefore, whenever the federal power is exerted within what would otherwise be the domain of the state power, the justification of the exercise of the federal power must clearly appear":

11 Am. Juris. pp. 870, 871.
See: 3 Sutherland Statutory Construction, 3rd Ed. §6301.
In 49 Am. Juris. p. 235, it is said:

"The state is not to be considered within the purview of a statute, however general or comprehensive the language of the statute may be, unless it is expressly named therein."

In the same text on the same page it is also said:

"Where the effect of a statute in general terms is to restrict or limit the rights of a state, to affect its interests, or to impose liabilities upon it, the statute is deemed to be inapplicable to the state unless it is named expressly or by necessary implication."

Citing among other authorities, United States v Herron, 20 Wall. (U. S.) 251.

"The presumption of a legislative intent to exclude the state from the operation of a statute is based on the fact that laws are ordinarily made for the government of citizens and not of the state, and the probability that if the legislative power intended to divest the sovereign power of any right, privilege, title or interest, it would say so in express words. Where an act contains no words to express such an intent, it will be presumed that the intent does not exist. Any doubt as to whether the state is intended to be included is to be resolved in favor of the state:"

49 Am. Juris, p. 236.

For instance, provisions of bankruptcy or insolvency laws do not bind the state, unless it is expressly named. See:

Lewis v United States, 92 U. S. 618.

Here, the Probate Court has its origin in **Article IV, §1, of the Ohio Constitution,** and its jurisdiction is vested by **Section 8 of that Article.** The state statute, cited supra, expressly provides how the courts shall conduct judicial sales. We are, therefore, dealing with one of the three Constitutional branches of state government, viz. the judicial. Nothing whatever in the Price Control Act authorizes the Price Administrator to interfere with the functions of the state statute and nothing can be read into that Act that even by implication gives the Administrator that power. The only courts that appear in the definition section of the Act are the District Court of the United States and the Circuit Court of Appeals. The only decision that we can find which has directly passed upon this question is Re Freeman, 49 Fed. Supp. 163, where

under a proposed bankruptcy arrangement, a lease was rejected as an executory contract and the rent control authority of the Administrator was involved. The court held that the rejection of the lease by the bankruptcy court was no defense to the tenant's eviction. The court say:

"Is this act applicable to judicial proceedings for the sale of real estate, and particularly to bankruptcy proceedings under Chapter XII? If we look to the declared purposes of the act, the answer is no. Certainly a court of justice will not be presumed to encourage speculative, unwarranted, and abnormal increases in rent or to do anything else that is not in the interest of national defense, and what is being done here is by a court of bankruptcy and not by a 'person' who is restrained from acting by, and unless in compliance with, the Emergency Price Control Act. And one of the safest and soundest rules of construction of statutes is to consider the purposes of the legislation. A thing may be within the letter of a statute and yet not within the meaning * * * The Bankruptcy Act, 11 U. S. C. A. Sections 1 et seq., 3 FCA title II, Sections 1 et seq., is a specific, complete, comprehensive statute and is paramount and exclusive in its operation where it applies. The Emergency Price Control Act is a temporary measure, general in its nature. It does not attempt expressly to repeal any part of the Bankruptcy Act. It will not be presumed that by implication it repealed those provisions of the Arrangement Chapters in the Bankruptcy Act which authorized the disaffirmance of executory contracts, including leases of real estate. Repeals by implication are not favored. It is a general rule of law that specific legislation upon a particular phase of a single subject is not affected by a subsequent law relating to a general subject which neither refers to the earlier law nor is repugnant to nor inconsistent with it. Where there are two statutes upon the same subject, the earlier being special and the latter general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general. We are not concerned here with an effort of a landlord to profit at the expense of a wage earner or a person with a relatively fixed and limited income, of whom he seeks to take advantage by unduly increasing the rentals for a home. There is no question of stabilization of rents involved. I find nothing in the action of the referee that amounts to circumvention or evasion of the valid regulations of the administrator. No 'person' is doing any act in violation

of any regulation or order. What has been done was done by a court of bankruptcy. No 'person' is removing or attempting to remove the tenant. He is being removed by an order of court."

This becomes very pertinent because, as we have shown supra, it is the court who conducts the judicial sale in the administration of estates. See also:

Waldron & Sons v. State Board, 131 N. J. Law 267, 35 Atl. (2d) 27.

Another rule of statutory construction is that a court in construing a statute must construe it, if possible, to uphold its constitutionality. In an earlier part of this opinion we have alluded to the fact that the law permits complaints to be filed within a sixty days period from the issuance of the order, and also to the fact that it would be impossible for a great portion of executors or administrators appointed by Ohio courts to avail themselves of the benefits of the Act. If the regulation complained of is a valid regulation and in harmony with the purpose of the Act, the court would then be compelled to hold that the entire Act is unconstitutional. If we should hold the regulation to be null and void, it therefore leaves the Court in the position to follow the statutory rule of construction above referred to.

We are therefore led to the conclusion that the regulation complained of is void and of no effect as not coming within the purview of the Emergency Price Control Act. We also hold that this Court does have jurisdction in the premises in that it holds that the regulation complained of is null and void as far as its control over judicial sales is concerned.

It is therefore ordered that the order issued by this Court on March 2, 1944, be complied with by the Administratrix.

An order may be drawn accordingly.